## No. 21289.

### VICTOR FINK *v.* MONTGOMERY ELEVATOR COMPANY OF COLORADO.
(421 P.2d 735)

Decided December 27, 1966.

EDISON and BERMAN, JORGE E. CASTILLO, for plaintiff in error.

BELKNAP & McGARRY, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE SUTTON.

PLAINTIFF in error, Victor Fink, one of several defendants in the trial court, was sued personally and as a purported partner by Montgomery Elevator Company of Colorado for services rendered by it under contracts for service and repairs of elevators in Denver parking facilities. He will be referred to herein as defendant or Fink. Defendant in error will be referred to as plaintiff or Montgomery. The trial court rendered judgment in the amount of $4,000 against Fink individually, dismissing claims against the other defendants.

On writ of error Fink alleges several grounds for reversal only one of which we need to consider, *i.e.,* that it was error to find him personally liable on a contract entered into by Den-Park Company, a Minnesota corporation. He urges in this connection that:

(a) The evidence shows that he was acting as an agent of the corporation in executing the agreements; and,

(b) That the plaintiff failed to establish grounds for application of the alter ego doctrine used by the trial court to hold him as a stockholder personally liable for a debt of the corporation.

The record discloses that Montgomery filed suit against Victor Fink, William Fink, Ida Fink and Eva Fink individually and each of them as partners under the name of V & W Parking Stations. Montgomery was able to obtain personal service only on William and Victor Fink. Den-Park Company then intervened as a party defendant and counterclaimed for $6,000, which

the trial court in effect allowed as a set-off in the final judgment against defendant.

The evidence showed that the four individual defendants obtained a lease of certain parking facilities from the City and County of Denver. Victor and William Fink and three others then formed a corporation named Den-Park Company and the lease was assigned to that corporation. In addition to the two Finks, there were four Klein brothers who invested and became stockholders in Den-Park Company. The Kleins and Finks each had one-half of the capital involved in Den-Park.

Prior to obtaining the lease and prior to the formation of Den-Park, Fink received a letter from W. A. Quinn on behalf of William Colin Kirk & Associates, Co., offering to negotiate for servicing of the garage elevators should Fink be awarded the lease. After signing the lease, negotiations for both a service contract and a repair contract were entered into between Montgomery represented by Quinn and Den-Park represented by Fink. The service contract was sent to Den-Park Company and was accepted in the name of "Den-Park Co. by Victor L. Fink"; it was then signed by Quinn as agent for William Colin Kirk & Associates, Co. Shortly after this contract was executed, William Colin Kirk & Associates, Co. changed its name to Montgomery Elevator Company of Colorado, which was the plaintiff in the trial court.

Montgomery thereafter commenced work on the elevators. It was soon discovered that much more extensive repairs were needed than had originally been anticipated. Periodic invoices were sent by Montgomery to Den-Park, some of which were paid by the latter's checks. Den-Park, through Fink, complained on a number of occasions that the billings were greatly in excess of the amount agreed upon in the contract. Ultimately and resultantly no further payments were made to Montgomery.

Montgomery urges that at all times in question it had dealt with Fink individually; that at no time did it have notice that Den-Park was a corporation; and that even if Den-Park were a corporation, it was acting as an agent of Fink in operating under the lease since the lease ran to the Fink Brothers and their wives rather than to Den-Park. Plaintiff also urges that Den-Park was undercapitalized when it began and was organized as a mere shell for the incurring of debts. In an attempt to prove this assertion (assuming it was material) in the trial court, it offered testimony to the effect that Den-Park Company had paid $19,000 for the first month's rent under the lease and had placed an additional $19,000 in escrow for the last month's rent; and that this left approximately $7,000 of the total capitalization for operation of the lease.

I.

■ As to whether the evidence shows that Fink was acting as an agent of Den-Park Company in executing the agreements, we must agree with Fink that the evidence so discloses.

Though plaintiff asserts that at no time did it have such notice, the record clearly shows that the name of the principal, Den-Park Company, *was* fully disclosed to Montgomery Elevator Company. Every document placed in evidence which deals with the work to be done by Montgomery or payment therefor bears the name of Den-Park Company, with the exception of plaintiff's Exhibit G, a letter from Fink to William Colin Kirk & Associates, Co., predecessor of Montgomery, in response to an offer to negotiate a service contract. This, however, was written prior to the formation of Den-Park Company.

Each of the numerous invoices constituting plaintiff's Exhibit L, reads:

"Bill to Den-Park Company
1428 Champa St.
Denver, Colorado."

Plaintiff's witness Quinn, the agent of Montgomery with whom all dealings were had, so testified and agreed that "the contract is made to Den-Park Company" and that the payments made were by that company only.

Here all the evidence, both testimonial and documentary, shows that Montgomery and its agent Quinn considered themselves to be dealing with Den-Park rather than Fink. The service agreement itself, which is plaintiff's Exhibit B, on its face gave sufficient notice that the seller here was dealing with someone other than the individual signing it. This agreement, offered and sent to Den-Park rather than to Fink, was signed:

| "Accepted: | William Colin Kirk & |
| Den-Park Co. | Associates, Co. |
| By: Victor L. Fink | By: W. A. Quinn |
| | Approved: Nelson Dick." |

■ The generally accepted rule is that a party is not liable upon a contract signed by him on behalf of another, assuming proper authorization to act, when he has given notice to the third party that there is *a principal* for whom he acts and also notice of the name or identity of the principal. *Condit v. Merritt Printing & Stationery Co.*, 67 Colo. 185, 184 Pac. 381 (1919); *Charles Nelson Co. v. Morton*, 106 Cal. App. 144, 288 Pac. 845 (1930); *Austin, Nichols & Co., Inc. v. Gross*, 98 Conn. 782, 120 Atl. 596 (1923); 3 C.J.S., *Agency*, § 216(c); 2 Am. Jur., *Agency*, § 241.

■ The law is that any ambiguity in an instrument whereby it is sought to hold a purported agent personally liable, can be explained by parol evidence. In such a situation the court will take the entire contract into consideration, not the signature alone. See *Fricke v. Belz*, 237 Mo. App. 861, 177 S.W.2d 702 (1944); *Butterick Co. v. Molen*, 192 Okla. 602, 138 P.2d 89 (1943); *Pennsylvania Co. for Insurance of Lives and Granting of Annuities v. Wallace*, 346 Pa. 532, 31 A.2d 71 (1943); *Consumers' Twine and Machinery Co. v. Mt. Pleasant Thermo Tank Co.*, 196 Iowa 64, 194 N.W. 290

(1923); *Hurricane Milling Co. v. Steel & Payne Co.*, 84 W. Va. 376, 99 S.E. 490 (1919).

█ The trial court seemed to rely upon the fact that Fink added nothing to his signature which would indicate the capacity in which he signed the contracts. We hold, however, that the addition of such words as "agent" or "manager" are not controlling to exempt an agent from liability or to establish the agency. The primary consideration is identification of the principal. See *Fricke v. Belz, supra; Austin, Nichols & Co., Inc. v. Gross, supra; Consumers' Twine & Machinery Co. v. Mt. Pleasant Thermo Tank Co., supra.*

██ In our view, defendant Fink adequately sustained his burden of proving that his actions were in the capacity of an agent. The question as to whether he lacked authorization to enter into the contract was not raised by plaintiff and so need not be discussed here except to state that when a party fails to object to the admission of a document or offers it into evidence himself, as plaintiff did in this case, he is held to have waived the need for any evidence authenticating its genuineness, and the waiver is generally held to extend to the need for evidence of authority of the agent purporting to have signed the document for his principal. *Collins v. Streitz,* 95 F.2d 430 (9th Cir. 1938), 7 *Wigmore, Evidence,* (3rd Ed.) § 2132. Although the court was correct in noting that no certified copy of minutes authorizing the signing of such a document by Fink had been introduced into evidence, there also was no necessity for it under these facts.

II.

█ We turn next to the second prong of the trial court's reasoning, *i.e.*, that Fink was the alter ego of Den-Park Company and so is personally liable for its debts.

Again we believe the trial court erred. Parenthetically, we note before discussing this issue, that all the other parties served were relieved of liability by the court,

yet because this defendant was what amounted to the general manager of the Den-Park Company, he was held personally liable.

There was uncontroverted testimony to the effect that the lease of the parking facilities from the City and County of Denver had been assigned to Den-Park Company. Montgomery does not attack the assignment on the grounds that it did not occur or was not validly executed, but rather on the basis of non-compliance with paragraph 25 of the lease, which reads:

"Lessee shall not assign or transfer its rights in this Lease, in whole or in part without the prior written consent of the Lessor."

■ We have held, and it is the rule in many other jurisdictions, that such a restriction against assignment is for the benefit of the lessor only, and if he fails to object to a breach of the restriction, no one else may do so. *Routt County Mining Co. v. Stutheit*, 101 Colo. 254, 72 P.2d 692 (1937); *Klee v. United States*, 53 F.2d 58 (1931); *Stark v. National Research and Design Corp.*, 33 N.J. Super. 315, 110 A.2d 143 (1954); *O'Neil v. A. F. Oys & Sons*, 216 Minn. 391, 13 N.W.2d 8 (1954); *Dieter v. Scott*, 110 Vt. 376, 9 A.2d 95 (1939). There is no evidence, nor even an allegation here, to the effect that the City and County of Denver has objected to this assignment. Instead there is evidence of notice having been given to Denver, notice perhaps sufficient to constitute a waiver of the breach, though that point is not in issue. Suffice it to say that Montgomery may not attack the assignment in question.

■ Here the assignment of the lease transferred the entire interests of Victor, William, Eva and Ida Fink to the Den-Park Company. Although certain responsibilities of lessees to lessor could not be transferred to Den-Park without Denver's consent, we again point out that Montgomery has no standing to question the assignment. The fact, if it be one, that the lessees may be subject to a suit by Denver for breach of the non-

assignment covenant is immaterial. The fact does remain, however, that all assignable rights and liabilities under the lease are in the Den-Park Company, and it is the party liable for obligations, such as those sued on here; furthermore, these were incurred after the assignment and in the name of the assignee. It is well-settled that obligations incurred by an assignee may not be charged to the assignor without a proper showing.

Nor is Fink liable as a stockholder, as is also asserted by Montgomery. The applicable rule in such a case is that in order to hold stockholders liable for corporate obligations, it must be shown either that the corporate entity was used to defeat public convenience, or to justify or protect wrong, fraud or crime, or that the situation in question was one which justified application of the alter ego doctrine. In 1 *Fletcher, Cyclopedia of Corporations*, § 41.1 it is stated in this regard:

"* * * To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud."

See also *Home Builders and Suppliers v. Timberman*, 75 Ariz. 337, 256 P.2d 716 (1953); and c.f. *Thomson v. L.C. Roney & Co.*, 112 Cal. App.2d 420, 246 P.2d 1017 (1952). Suffice it to say that no such showing was made here to obligate this defendant.

The cause is reversed and remanded to the trial court with directions to dismiss the complaint with prejudice against Victor L. Fink.

Mr. Justice Frantz and Mr. Justice Pringle concur.