561 P.2d 367 (1977)
The ROSEBUD CORPORATION, a Colorado Corporation, and Joe Micciche, Plaintiffs-Appellants,
v.
Natale BOGGIO et al., Defendants-Appellees.
No. 75-675.
Colorado Court of Appeals, Div. III.
March 3, 1977.
*369 Almon, Barsotti & Blanchard, David Barsotti, Donald E. Blanchard, Denver, for plaintiffs-appellants.
Louis J. Boggio, Englewood, for defendants-appellees Natale Boggio, Louis J. Boggio, and M. M. M., Inc.
Anderson & Lembke, P.C., Grant Anderson, Denver, for defendant-appellee Margaret M. Miller.
Selected for Official Publication.
BERMAN, Judge.
This action was brought on a promissory note against the maker thereof, M.M.M., Inc., (M.M.M.) and against the directors of that corporation individually. The note was given by M.M.M. to plaintiff Rosebud Corporation (Rosebud) in connection with the sale of the latter's business and personal property to M.M.M.
Plaintiffs sought to hold the directors of M.M.M. personally liable on the note on three separate theories. The complaint alleged that M.M.M. was the alter ego of its directors, that a fraud had been perpetrated by the directors of M.M.M. on Rosebud in connection with the sale of the latter's business, and that the directors were personally liable on the note by virtue of their conversion of M.M.M.'s assets while that corporation was insolvent.
Trial was to the court, and at the conclusion of plaintiffs' case, the court, on defendants' motions, dismissed the suit. We affirm in part, and reverse in part.
Rosebud ran a nightclub and restaurant in premises that it leased from a corporation whose president was defendant Natale Boggio (Natale). After a fire partially destroyed the leased premises, Natale decided to take the place over and open a restaurant, and accordingly, the premises were remodeled to his specifications.
On November 8, 1971, after Natale's remodeling had begun, a receipt and option contract for the sale of Rosebud's business and personal property was executed between Rosebud and M.M.M., a corporation to be formed thereafter. Margaret M. Miller and Natale signed on behalf of M.M.M.
A certificate of incorporation was issued in the name of 3M, Inc., (3M) on November 23, 1971. Following the organizational meeting, at which Margaret M. Miller, Louis Boggio (Louis), and Natale were named directors, the newly formed corporation adopted the November 8, 1971 contract for the purchase of Rosebud.
On December 28, 1971, the agreement between Rosebud and M.M.M. was closed. Rosebud executed the closing statement and a bill of sale covering its personal property to M.M.M., and as part payment, received the note in question, signed M.M.M., Inc., by Natale Boggio, president. At the closing, Louis noticed that the closing statement, bill of sale, and the promissory note were made out in the name of M.M.M. *370 instead of 3M, and pointed out the discrepancy to a Mr. Edelen, Rosebud's representative at the sale. Mr. Edelen also had with him at the closing the corporate seal of 3M, and a copy of 3M's articles of incorporation.
Natale purchased Margaret M. Miller's interest in 3M on March 5, 1972, at which time she resigned as a director. At no time thereafter did she have any interest in, or connection with, 3M.
Thereafter, on June 28, 1972, Natale individually entered into a receipt and option contract with another business entity, Justy's, Inc., signed on behalf of Justy's by Justin Sloniger, its president. The agreement called for the sale of the business and personal property located at the address where 3M's business was located. Eventually, all the assets of 3M, including the personal property sold by Rosebud to M.M.M., were transferred by Natale to Justy's, Inc. The contract required payment of $80,000, of which Natale received $2,000 in cash and a promissory note, made out to him personally, for the remainder less the broker's commission. Two days later, on June 30, 1972, Justin Sloniger, individually, entered into a contract with M.M.M. in which he agreed to manage M.M.M.'s restaurant.
Natale testified that he used the money from the sale to Justy's, Inc., to live on. Louis testified that at the time of the sale 3M was insolvent, and that at no time did 3M approve the sale.
No payments were made by M.M.M. on its note to Rosebud. On October 30, 1972, Rosebud assigned with recourse the M.M.M. note to plaintiff Joe Micciche (Micciche), who took it with knowledge of the default.
In December 1972, 3M filed a petition in bankruptcy, and was declared a bankrupt sometime thereafter. In its schedule of assets, 3M did not list the promissory note given by Justy's, Inc., to Natale.

Standard of Review
Initially, we note that inasmuch as trial was to the court in the instant case, the standard of review is whether plaintiffs' evidence justified judgment in favor of the defendants. "If reasonable men could differ in the inferences and conclusions to be drawn from the evidence as it stood at the close of the plaintiffs' case, then we cannot interfere with the findings and conclusions of the trial court." Teodonno v. Bachman, 158 Colo. 1, 404 P.2d 284 (1965).

Alter Ego Claim
Plaintiff Micciche first alleges that the evidence disclosed that M.M.M., as maker of the note in question, was liable thereon. Further, he asserts that M.M.M. was an assumed name of 3M, and that he proved beyond dispute that the corporation was the alter ego of Natale.
The trial court held that 3M could not be found liable in the instant case since it was not named as a defendant. The court stated, however, that had 3M been a party defendant, judgment would have been entered in favor of Micciche since the evidence was clear that the note was in default and had not been paid. We disagree with the trial court's finding that 3M was not a party to the suit.
Section 7-71-101(4), C.R.S.1973, states that:
"Any corporation doing business under an assumed name shall be liable in connection therewith to the same extent and in the same manner as if that business were transacted under its true corporate name. The corporation may be sued in connection therewith either under its true name or its assumed name."
The evidence reveals that M.M.M. was an assumed name of 3M, regardless of the fact that no assumed name affidavit was filed by 3M, as required by § 7-71-101(1), C.R.S.1973. Natale repeatedly testified that in his mind 3M and M.M.M. were one and the same, and Louis testified that he thought "3M" was merely an abbreviation of "M.M.M." Further, the two names identified but one business entity, and long after the incorporation of 3M the Boggios continued to use the name M.M.M. in connection with that business' affairs. It therefore follows *371 that Micciche was entitled to sue 3M under its assumed name, and that 3M is liable on the note to the same extent as M.M.M. Section 7-71-101(4), C.R.S.1973.
Next, we must determine whether the evidence of alter ego was sufficient to withstand the granted motion of dismissal.
The alter ego doctrine is a means by which creditors may hold stockholders personally liable for corporate obligations. The doctrine comes into play in cases where the corporate entity "was used to defeat public convenience, or to justify or protect wrong, fraud, or crime, or that the situation in question was one which justified application of the alter ego doctrine." Fink v. Montgomery Elevator Co., 161 Colo. 342, 421 P.2d 735. The Supreme Court in Fink quoted 1 W. Fletcher, Cyclopedia of Corporations § 41.1, as follows:
"To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud."
The record in the instant case discloses that all the affairs of 3M were handled at the complete direction and control of Natale; that he regarded and treated the corporation and its assets as his own; that he signed a contract for the sale of the business and its personal property in an individual capacity, taking back a note and cash as his own, with complete disregard for the corporate existence. Further, the inference is clear that to allow Natale to hide behind the cloak of the corporation here would promote injustice in that it would allow the actions of a director who sold the corporation's assets and converted the proceeds of that sale for his personal use to defeat the valid claim of a corporate creditor.
The evidence presented by plaintiff was such that reasonable men could not differ in the conclusion that 3M was in fact the alter ego of Natale, but the evidence did not establish that 3M was the alter ego of either Louis or Margaret M. Miller. Accordingly, we reverse the district court's dismissal of plaintiff's first cause of action against Natale and remand for a new trial. Reed v. U.S. Fidelity & Guaranty Co., 176 Colo. 568, 491 P.2d 1377 (1972).

Misrepresentation Claim
Plaintiff Rosebud alleges that it proved that the individual defendants induced it to transfer its business in exchange for a note from a nonexistent corporation. It is asserted that a material misrepresentation, amounting to fraud, occurred when the individual defendants failed to inform Rosebud that M.M.M. had not been incorporated. However, because of our holding that M.M.M. was an assumed name of 3M, the issue of misrepresentation is moot.
In any event, the trial court found that the change of the name of the corporation from M.M.M. to 3M was made known to Rosebud's agent, Edelen, by the actions of Louis, and that that change of name and knowledge thereof was imputed to Rosebud, and that thus there was no fraud.
These findings are adequately supported by the record and dispositive on the issue. As such it is binding on review, Teodonno v. Bachman, supra, and accordingly we affirm the trial court's dismissal of plaintiff's second cause of action as to all defendants.

Directors Personal Liability Claim
Plaintiff Micciche next contends that he proved that Natale was personally liable on the note in question. He asserts that the evidence showed without dispute that Natale improperly sold the assets of 3M and that, in violation of § 7-5-114(3), C.R.S.1973, he converted the proceeds of that sale without paying the M.M.M. note. He also contends that the conversion of the proceeds of the sale was in violation of the common law duty owed by directors of insolvent corporations to the creditors thereof.
*372 Section 7-5-114(3), C.R.S.1973, provides that:
"The directors of a corporation who vote for or assent to any distribution of assets of a corporation to its shareholders during the liquidation of the corporation without the payment and discharge of, or making adequate provision for, all known debts, obligations, and liabilities of the corporation shall be jointly and severally liable to the corporation for the value of such assets which are distributed, to the extent that such debts, obligations, and liabilities of the corporation are not thereafter paid and discharged." (Emphasis added)
The trial court held that the statute was inapplicable in the instant case, since there was no proof of a liquidation, and for the further reason that only the damaged corporation could sue under the statute. We agree that only the corporation may sue under § 7-5-114(3), C.R.S.1973, and therefore affirm the court's decision in this regard.
By the express terms of § 7-5-114(3), C.R.S.1973, the directors' liability runs only to the corporation itself. Cf. Snyder v. Yoder, 176 F.Supp. 617 (N.D.Ohio 1959). It therefore follows that creditors may not sue directors personally under the statute.
However, this does not mean that creditors are precluded from suing directors and having them held personally liable for corporate obligations in appropriate cases. Section 7-5-114(9), C.R.S.1973, states that the liabilities imposed on directors by virtue of § 7-5-114, C.R.S.1973, are in addition to "any other liabilities imposed by law on directors of a corporation", and it follows that if Micciche established the breach of a common law duty owed to him, for which directors may be held personally liable, dismissal of this claim was improper.
Directors of an insolvent corporation are deemed to be trustees for the legal entity and for its creditors. Crowley v. Green, 148 Colo. 142, 365 P.2d 230 (1961); see Fishel v. Goddard, 30 Colo. 147, 69 P. 607 (1902). As such, they owe a duty to the creditors of their corporation not to divest corporate property for their own benefit and thereby defeat a corporate creditor's claim. 3A W. Fletcher, Cyclopedia of Corporations § 1185, and cases cited therein; see Crowley v. Green, supra. If directors breach this duty, creditors of the corporation may sue the directors and hold them personally liable for their malfeasance. 3A W. Fletcher, supra.
In the instant case the trial court held that Natale's contract with Justy's, Inc., called only for the sale of some kitchen fixtures, and that all that was really contemplated was a management arrangement. However, the terms of the contract between Natale and Justy's, Inc., are fully set forth in a written agreement, and we therefore are not bound by the trial court's determination and may interpret the agreement on this review. Stephenson v. Stephenson, 134 Colo. 96, 299 P.2d 1095 (1956); Helmericks v. Hotter, 30 Colo.App. 242, 492 P.2d 85 (1971).
The management contract was not admitted into evidence, and to hold that the contract between Justy's, Inc., and Natale was only for the sale of kitchen fixtures is to ignore the provisions of that contract. The latter contract called for the sale of the business and personal property located at the address where 3M's business was located, and required a purchase price of $80,000. It contained a provision that the liquor licensing authorities were to approve the transfer of a liquor license to the buyer, Justy's, Inc. Further, the contract contained a condition that in the event that Natale was unable to effect delivery of the business to Justy's, Inc., "then this agreement shall be void, and the parties hereto released from all obligations hereunder and the deposit refunded to buyer." This contract is clearly one of purchase and sale of a business and, by its terms, provides for the transfer of much more than merely kitchen fixtures. Further, Natale testified that all of the personal property that had originally been sold by Rosebud to M.M.M. was eventually transferred to Justy's, Inc.
*373 Here, the evidence by plaintiff proved, beyond question, that Natale sold the assets of 3M and converted the proceeds of that sale for his own benefit, thereby prejudicing the rights of a corporate creditor. Thus, Micciche was entitled to sue Natale and hold him personally liable for the conversion.
Also, Micciche was entitled to hold Louis personally liable as Louis was a director of 3M at the time of the conversion, and Louis testified that he knew the corporation was insolvent on June 28, 1972, the date on which Natale entered into the contract with Justy's, Inc. Thus, Louis, who was a trustee for the corporation's creditors, could not sit idly by and allow Natale to convert the corporation's assets, and therefore dismissal of plaintiff's claim against Louis was improper. See Crowley v. Green, supra.
However, the evidence disclosed that Margaret M. Miller did not participate in the conversion and was not a director at the time of the conversion, and dismissal as to her was thus proper.
Accordingly, we reverse the trial court's dismissal of plaintiff's third cause of action against Louis and Natale and remand for a new trial. Reed v. U.S. Fidelity & Guaranty Co., supra.
Judgment affirmed in part, reversed in part, and cause remanded for further proceedings consonant with the views expressed herein.
KELLY and STERNBERG, JJ., concur.