**SKIDMORE, OWINGS & MERRILL, a partnership, Plaintiff,**

v.

**CANADA LIFE ASSURANCE COMPANY, a Canadian corporation; and Confederation Life Insurance Company, a Canadian corporation, Defendants.**

No. 86–B–1460.

United States District Court,
D. Colorado.

Feb. 24, 1989.

Mark S. Lillie, Kirkland & Ellis, Denver, Colo., Steven J. Harper, Kirkland & Ellis, Chicago, Ill., for plaintiff.

Glen Keller, John Roche, Davis, Graham & Stubbs, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This matter is before the Court on defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Oral argument was heard on February 21, 1989. Jurisdiction exists based on diversity of citizenship, 28 U.S.C. § 1332(a).

In 1982 and 1983, plaintiff, Skidmore, Owings & Merrill (SOM), performed architectural services for Dover Park Development Corp. (Dover–Park US) and Dover Park Development Corporation, Ltd. (Dover–Park Canada) (collectively, the Dover entities). The Dover entities failed to pay SOM fully for the services rendered and SOM filed suit against them in Denver District Court. SOM obtained a substantial judgment against the Dover entities on February 20, 1986. The Dover entities filed a petition in bankruptcy under Chapter 7 in U.S. District Court, District of Colorado on October 22, 1986, but were never declared bankrupt. The judgment remains unsatisfied.

SOM now brings the present alter ego action against defendants Canada Life Assurance Company and Confederation Life Insurance Company (the Life Companies), claiming that they are liable to it as the parent companies of the Dover entities. SOM seeks to pierce the corporate veil and hold the Life Companies liable to SOM for the debts, obligations, and judgments of the Dover entities. SOM also asserts an unjust enrichment claim against defendants, which is dependent upon the existence of an alter ego relationship between defendants and the Dover entities.

Defendants move for summary judgment that, as a matter of law, the Dover entities were neither a mere instrumentality nor an alter ego of the Life Companies, and therefore, defendants are not liable to SOM for the Dover entities' debts. The motion will be granted.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment is appropriate when the Court can conclude that no reasonable juror could find for the non-moving party, on the basis of the evidence presented in the motion and response. *Matsushita, supra.* The non-moving party must present sufficient evidence so that a reasonable juror could find for him. The standard is whether the non-movant has presented evidence which is persuasive enough for a reasonable juror to rule in his favor. *Id.* Further, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex, supra.*

Generally, a parent corporation is treated as a legal entity separate from the subsidiary in the absence of circumstances justifying disregard of the corporate entity. *Quarles v. Fuqua Industries, Inc.,* 504 F.2d 1358, 1362 (10th Cir.1974).

> Before one corporation by be held liable for the acts of another corporation, there must be such a close relationship between the two companies that one is, in essence, an instrumentality of the other.

*New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing Corp. Inc.,* 645 P.2d 868, 869 (Colo.App.1982).

In *U.S. v. Van Diviner*, 822 F.2d 960 (10th Cir.1987), this Circuit iterated the factors to be considered in determining whether one corporation is a mere instrumentality of another:

1. whether a corporation is operated as a separate entity;

2. commingling of funds and other assets;

3. failure to maintain adequate corporate records or minutes;

4. the nature of the corporation's ownership and control;

5. absence of corporate assets and undercapitalization;

6. use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation;

7. disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and

8. diversion of the corporation's funds or assets to noncorporate uses.

*Id.* at 965; *see also United States v. Excellair, Inc.*, 637 F.Supp. 1377, 1386 (D.Colo. 1986).

■ An analysis of the parties' showing on the motion for summary judgment in light of these factors leads me to conclude that no genuine issue of material fact exists as to the alter ego issue. Thus, as a matter of law the Dover entities are not the mere instrumentality of defendants.

Initially, Gordon Arnell (Arnell), approached defendants with the financial proposals to create the Dover entities. The Life Companies organized the Dover entities to engage in real estate development and billed them as the Life Companies' "development arm." The Life Companies were significant shareholders in the Dover entities and chose their own company executives to sit on the Dover Board. However, from the time of their formation until January 1984, the Dover entities transacted all of their own business, including the contracts with SOM at issue here. Thus, it is apparent that the Dover entities operated separately and had distinct corporate identities from their parent Life Companies.

There is no evidence that there was ever any commingling of funds or other assets between the Life Companies and the Dover entities at the time the Dover entities entered into the contracts with SOM.

At all times pertinent, the Dover entities observed the formal corporate legal requirements: they maintained their own books and records; hired and fired their own employees; had their own bank accounts; filed their own tax returns; maintained separate offices and telephone numbers; and conducted regular directors' meetings and kept minutes.

Each defendant agreed to invest and paid $5,000,000.00 over five years in return for one representative on Dover's five-member board of directors and 17.9% of the controlling stock. However, there were no common directors between defendants and the Dover entities. Moreover, "the fact that one corporation owns all the stock of another and thereby selects from its own directors and officers a majority or all the directors of the other, or that a parent finances a subsidiary is, without more, not sufficient to warrant disregarding the separate legal entity." *Quarles v. Fuqua Industries, Inc., supra* at 1364 n. 5.

Except for about $5,000.00, defendants were the sole source of capitalization for the Dover entities. SOM argues that the Dover entities were woefully undercapitalized. However, the capitalization was sufficient initially, and may have become inadequate only because the Dover entities expanded more quickly and aggressively than originally planned.

There has been some showing by plaintiff on the motion for summary judgment that the Life Companies made accomodations to the Dover entities that an ordinary arm's length investor would not. However, at all times the required legal formalities were maintained and any "accomodation" made to the Dover entities was in the form of financial assistance after January 1984 when Arnell resigned as Dover's president and defendants admittedly took over the control of the Dover entities.

On November 23, 1983, an internal audit of the Dover entities prepared for the Life Companies concluded that the Dover entities were effectively bankrupt. The audit recommended that it would be in the Life Companies' best interest for the Dover entities to be put into receivership. Nevertheless, SOM was permitted to continue as architect on several Dover entity properties in Wyoming and Colorado.

As Dover's financial situation worsened, the Life Companies dealt directly with Dover's creditors, transferred property to Mellon Bank in return for the Bank discharging its mortgage, made direct payments to Dover's Denver law firm, and paid Dover's property taxes. When the Dover entities filed their bankruptcy petition in October 1986, SOM was listed as Dover's only creditor.

As to the Life Companies' post November 1983 conduct, SOM seems to rely on the rule that directors of an insolvent corporation are deemed to be trustees for the legal entity and for its creditors. *Rosebud Corp. v. Boggio*, 39 Colo.App. 84, 561 P.2d 367 (1977). As such, they are personally liable to those creditors if they take corporate property for their own benefit rather than making provisions for the payment of creditors. *Id.; see also Ficor, Inc. v. McHugh*, 639 P.2d 385 (Colo.1982). Such reliance is misplaced.

■ Neither the directors of the Dover entities nor the directors of the Life Companies are parties to this action. Rather, SOM seeks to hold the Life Companies, as separate and distinct legal entities, liable for the Dover entities' debts. While the Life Companies may have demonstrated a type of preference for certain of Dover's creditors, parent financing of its subsidiary will not make the subsidiary a mere instrumentality. *Quarles v. Fuqua Industries, Inc., supra.* at 1363–64. Moreover, this expenditure of funds for the payment of the Dover entities' creditors was a permissible use of the Life Companies' corporate funds and not a transfer of the Dover entities' business assets for directors' or shareholders' benefit. *See Ficor, Inc. v.*

*McHugh, supra; Rosebud Corp. v. Boggio, supra.*

■ Apart from using the subsidiary corporation as a mere instrumentality, if it is shown that the parent corporation used the corporate entity to perpetuate a fraud or wrong on another, equity will permit plaintiff to pierce the corporate veil. *Micciche v. Billings*, 727 P.2d 367 (Colo.1986).

I conclude that there is no genuine issue of fraudulent action in concert by the Life Companies or that they used the Dover entities to perpetrate a wrong on SOM. Consequently, although an issue may exist whether defendants acted prudently in allowing SOM to continue providing architectural services after defendants were aware of the Dover entities' financial problems, plaintiff has not made the showing necessary to pierce the corporate veil and hold defendants liable for the Dover entities' debts.

Accordingly,

It is ORDERED that defendants' motion for summary judgment is granted.