2012 COA 21

**Robert L. MARTIN, Plaintiff–Appellee,**

v.

**Dean C.B. FREEMAN; and Tradewinds Group, LLC, a Delaware limited liability company, Defendants–Appellants.**

**No. 11CA0145.**

Colorado Court of Appeals,
Div. VII.

Feb. 2, 2012.

**1184**

Mulliken Weiner Karsh Berg & Jolivet, P.C., Murray I. Weiner, Colorado Springs, Colorado, for Plaintiff–Appellee.

Rothgerber Johnson & Lyons LLP, Michael Francisco, Colorado Springs, Colorado, for Defendants–Appellants.

Opinion by Judge NEY.*

¶ 1 In this limited liability company (LLC) veil-piercing case, defendants, Dean C.B. Freeman and Tradewinds Group, LLC, appeal the trial court's judgment in favor of plaintiff, Robert C. Martin. We affirm.

## I. Factual Background

¶ 2 Freeman managed Tradewinds as a single member LLC. Tradewinds contracted to have Martin construct an airplane hangar. In 2006, Tradewinds sued Martin for breaching the construction agreement. In 2007, while the litigation against Martin was pending, Tradewinds sold its only meaningful asset, an airplane, for $300,000, and the proceeds of that sale were diverted to Freeman, who paid Tradewinds' litigation expenses. In 2008, a judgment was entered in favor of Tradewinds. Martin appealed. Another division of this court concluded that Tradewinds' damages were speculative and remanded with directions to enter judgment in Martin's favor. *Tradewinds Group, L.L.C. v. Martin,* (Colo.App. No. 08CA1300, 2009 WL 1629960, June 11, 2009) (not published pursuant to C.A.R. 35(f)). On remand, the trial court declared Martin the prevailing party and awarded him $36,645.40 in costs.

¶ 3 Because the proceeds of the sale of Tradewinds' only significant asset, the airplane, went directly to Freeman, the LLC was without any assets. Martin initiated this action to pierce the LLC veil. Following a bench trial in 2010, the trial court pierced the LLC veil and found Freeman personally liable for the cost award entered against Tradewinds. Defendants appeal.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

## II. Veil Piercing

¶ 4 Defendants contend that the court erred in piercing the LLC veil. We disagree.

¶ 5 The piercing of an LLC veil is a mixed legal and factual question. *See McCallum Family L.L.C. v. Winger,* 221 P.3d 69, 73 (Colo.App.2009) (standard of review for piercing corporate veil); *see also Sheffield Services Co. v. Trowbridge,* 211 P.3d 714, 721 (Colo.App.2009) (veil piercing applies to limited liability companies). Defendants have not designated the trial transcripts and do not dispute the court's factual findings. We therefore accept the court's factual findings and review de novo its application of the law to those facts. *See McCallum Family L.L.C.,* 221 P.3d at 73.

¶ 6 To pierce the LLC veil, the court must conclude (1) the corporate entity is an alter ego or mere instrumentality; (2) the corporate form was used to perpetrate a fraud or defeat a rightful claim; and (3) an equitable result would be achieved by disregarding the corporate form. *Id.* at 74. The third prong, in particular, recognizes that veil piercing is a "fact-specific" inquiry. *See id.* at 79; *see also Micciche v. Billings,* 727 P.2d 367, 373 (Colo.1986) (in the absence of a fully developed factual record and adequate factual findings, appellate court could not determine whether to disregard the corporate form).

¶ 7 Defendants contend that the court's factual findings do not support piercing the LLC veil. Specifically, they challenge the court's conclusions that the first and second prongs were satisfied. We address each prong in turn.

### A. Alter Ego

¶ 8 Defendants contend that the court erred in finding that Tradewinds was Freeman's alter ego. We disagree.

¶ 9 Courts consider a variety of factors in determining alter ego status, including whether (1) the entity is operated as a

§ 24–51–1105, C.R.S.2011.

distinct business entity; (2) funds and assets are commingled; (3) adequate corporate records are maintained; (4) the nature and form of the entity's ownership and control facilitate insider misuse; (5) the business is thinly capitalized; (6) the entity is used as a mere shell; (7) legal formalities are disregarded; and (8) entity funds or assets are used for non-entity purposes. *McCallum Family L.L.C.*, 221 P.3d at 74.

¶ 10 In concluding that Tradewinds was Freeman's alter ego, the court found:

· Tradewinds' assets were commingled with Freeman's personal assets and the assets of one of his other entities, Aircraft Storage LLC;

· Tradewinds maintained negligible corporate records;

· the records concerning Tradewinds' substantive transactions were inadequate;

· the fact that a single individual served as the entity's sole member and manager facilitated misuse;

· the entity was thinly capitalized;

· undocumented infusions of cash were required to pay all of Tradewinds' operating expenses, including its litigation expenses;

· Tradewinds was never operated as an active business;

· legal formalities were disregarded;

· Freeman paid Tradewinds' debts without characterizing the transactions;

· Tradewinds' assets, including the airplane, were used for nonentity purposes in that the plane was used by Aircraft Storage LLC, without agreement or compensation;

· Tradewinds was operated as a mere assetless shell, and the proceeds of the sale of its only significant asset, the airplane, were diverted from the entity to Freeman's personal account.

Defendants maintain that the court erred in finding that the first prong was satisfied because Freeman did not use Tradewinds' assets as his own. However, although the trial court recognized that "most of the examples of commingling were the use of the member's personal assets to satisfy the entity's obligations," it also noted that proceeds from the sale of the entity's only significant asset, the airplane, were diverted from the entity to Freeman's personal account.

¶ 11 Defendants further argue that the court erred in not recognizing that (1) limited liability companies have fewer restrictions than corporations concerning maintaining formal corporate records, (2) member-owners are permitted to fund LLCs, (3) thin capitalization is not a reason to disregard the corporate form, and (4) third-party payment of attorney fees is proper. *See, e.g.*, § 7–80–107(2), C.R.S.2011 ("the failure of a limited liability company to observe the formalities or requirements relating to the management of its business and affairs is not in itself a ground for imposing personal liability on the members for liabilities of the limited liability company"); 1 *Fletcher's Cyclopedia of the Law of Corporations* § 41.35 ("a sole shareholder will not likely be suspect merely because he or she conducts business in an informal manner"); 2 *Ribstein and Keatinge on Limited Liability Companies* § 12.3 ("veil piercing on the ground of inadequate capitalization is even less likely for LLCs than corporations"; "LLCs normally receive little funding apart from member contributions"; "LLCs might be distinguished from corporations regarding the likelihood that the veil will be pierced for failure to observe formalities"); *see also* Colo. RPC 1.8(f) (allowing third-party attorney fee payment arrangements). However, the court considered the appropriate factors and its findings support a conclusion that Tradewinds was Freeman's alter ego. *See also Sheffield Services Co.*, 211 P.3d at 720–21 (extending veil piercing to LLCs and identifying alter ego factors).

### B. Defeat of a Rightful Claim

¶ 12 Defendants contend that the court erred in finding that the second prong of veil piercing was satisfied because the court did not find wrongful intent or bad faith. We disagree.

¶ 13 "The second prong of the veil-piercing test is whether justice requires recognizing the substance of the relationship between the corporation and the person or entity sought to be held liable over the form

because the corporate fiction was 'used to perpetrate a fraud or defeat a rightful claim.'" *McCallum Family L.L.C.*, 221 P.3d at 78 (quoting *In re Phillips*, 139 P.3d 639, 644 (Colo.2006)). Defendants have not cited any Colorado case, and we are aware of none, establishing that a party seeking to pierce the corporate veil must show wrongful intent. We conclude that showing that the corporate form was used to defeat a creditor's rightful claim is sufficient and further proof of wrongful intent or bad faith is not required.

¶ 14 Here, in finding that the corporate form was used to defeat a rightful claim, the court relied on Tradewinds' sale of its only asset, the airplane, and diversion of the proceeds to Freeman during the litigation with Martin. Defendants argue that the airplane's sale in 2007 does not support the second prong because Martin did not have a rightful claim until the cost award in his favor was entered in 2009. We conclude that defeating a potential creditor's claim is sufficient to support the second prong. We further conclude, as a matter of first impression, that wrongful intent or bad faith need not be shown to pierce the LLC veil.

¶ 15 Any party engaged in litigation is exposed to potential liability. *See, e.g.,* C.R.C.P. 54(d) (authorizing award of costs to prevailing party).

■ ¶ 16 Here, Freeman drained Tradewinds of all assets during litigation, even though it was exposed to potential liability because it had sued Martin. Leaving Tradewinds without any assets would have, without a finding that veil piercing was appropriate, defeated any of Martin's potential valid claims. We conclude that transferring all of the LLC's assets to defeat a rightful creditor's potential claim is sufficient to support piercing the corporate veil. *See McCallum Family L.L.C.*, 221 P.3d at 78 (creditor seeking to pierce the veil must show an effect on its lawful rights as a creditor resulting from the corporate form's abuse). We therefore conclude that the trial court did not err in concluding that the sale of the only asset and transfer of the proceeds to Freeman satisfied the second prong.

¶ 17 Relying on the court's finding that, "to the best of his [Freeman's] knowledge, all of the known or reasonably possible debts of the entity were fully provided for at the time of the distribution," defendants maintain that the second prong was not satisfied. However, the court made this finding in analyzing Martin's claim that defendants violated section 7–80–606, C.R.S.2011, because following the distribution, Tradewinds' liabilities exceeded its assets. Accordingly, that finding is not relevant to the court's veil-piercing analysis.

## C.  Waiver

¶ 18 Defendants argue that Martin waived the ability to collect litigation costs by not contesting the amount of the cost bond that Tradewinds filed. We disagree.

■ ¶ 19 During the contract litigation, Martin requested that Tradewinds, an out-of-state entity, post a cost bond. *See* § 13–16–101(2), C.R.S.2011 (requiring nonresident plaintiffs to post a cost bond not to exceed $5,000). Tradewinds posted a $500 cost bond, which the trial court found sufficient. We conclude that Martin's failure to contest the cost bond did not constitute an unequivocal act manifesting intent to relinquish the right to collect costs. *See Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo.1984) (waiver is the intentional relinquishment of a known right or privilege and involves conduct clearly manifesting the intent not to assert the benefit). Accordingly, waiver does not apply.

## III.  Attorney Fees

■ ¶ 20 Martin requests an award under C.A.R. 38(d) of the costs he incurred on appeal, including attorney fees. We conclude that this appeal is not so futile, irrational, or unjustified as to be frivolous. *See Hinojos v. Lohmann*, 182 P.3d 692, 702 (Colo.App.2008); *see also Mission Denver Co. v. Pierson*, 674 P.2d 363, 365–66 (Colo.1984) (C.A.R. 38(d) should be used to penalize "egregious conduct"). Thus, Martin's request is denied.

## IV.  Conclusion

■ ¶ 21 A judgment is presumed to be correct until it is affirmatively shown other-

wise; thus, the party asserting error on appeal must present a record that discloses error. *Dillen v. HealthOne, L.L.C.,* 108 P.3d 297, 300 (Colo.App.2004); *see also* C.A.R. 10(b) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion."). On the record before us, which does not include the trial transcript, we discern no basis for reversal.

¶ 22 The judgment is affirmed.

Judge CASEBOLT concurs.

Judge J. JONES dissents.

Judge J. JONES dissenting.

¶ 23 The majority affirms the district court's decision to pierce the veil of defendant Tradewinds Group L.L.C. (Tradewinds or the LLC) and hold defendant Dean C.B. Freeman liable for a debt of Tradewinds that arose in November 2009. It does so based entirely on a transaction—Tradewinds' sale of its airplane, and the distribution of the proceeds of that sale to Mr. Freeman—that occurred more than two years earlier and bore no relationship to the debt which later arose. Were that transaction somehow wrongful, such a result might be justified. But the district court did not find that the transaction was wrongful, and its factual findings, which are uncontested on appeal, permit no such inference. Therefore, the district court's decision was, in my view, contrary to the controlling Colorado authority, which requires the party seeking to pierce the corporate veil to prove, at a minimum, wrongful conduct in the use of the corporate form. Accordingly, I respectfully dissent.

¶ 24 Fundamentally, "[i]nsulation from individual liability is an inherent purpose of incorporation...." *Leonard v. McMorris,* 63 P.3d 323, 330 (Colo.2003); *accord In re Phillips,* 139 P.3d 639, 643 (Colo.2006); *McCallum Family, L.L.C. v. Winger,* 221 P.3d 69, 74 (Colo.App.2009) (applying principles of corporate veil-piercing to a limited liability company). This treatment of a corporation as an entity separate from its shareholders, officers, and directors gives investors assurance that they can invest in and act through the corporation without being held individually liable for the corporation's obligations. *Micciche v. Billings,* 727 P.2d 367, 372 (Colo. 1986); *McCallum,* 221 P.3d at 73; *see Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.,* 878 F.2d 1259, 1262 (10th Cir.1989) (applying Colorado law); *see also* Cathy S. Krendl & James R. Krendl, *Piercing the Corporate Veil: Focusing the Inquiry,* 55 Den. L.J. 1, 1–2 (1978).

¶ 25 "[O]nly extraordinary circumstances justify disregarding the corporate entity to impose personal liability." *Leonard,* 63 P.3d at 330; *accord In re Phillips,* 139 P.3d at 644; *McCallum,* 221 P.3d at 74. Application of the alter ego doctrine is one means, however, by which an individual may be held personally liable for a corporate obligation. *See In re Phillips,* 139 P.3d at 644; *Rosebud Corp. v. Boggio,* 39 Colo.App. 84, 88, 561 P.2d 367, 371 (1977).

¶ 26 As the majority recognizes, whether to pierce the corporate veil by means of the alter ego doctrine involves a three-part inquiry. First, the party seeking to pierce the corporate veil must prove that the corporate entity is the individual's "alter ego." This requires consideration of many factors, but essentially asks whether the corporate form was disregarded to such an extent so as to make the corporation no more than the mere instrumentality of the individual. *See Fink v. Montgomery Elevator Co.,* 161 Colo. 342, 350, 421 P.2d 735, 739 (1966); *Rosebud,* 39 Colo.App. at 89, 561 P.2d at 371; *see also In re Phillips,* 139 P.3d at 644 (identifying factors); *McCallum,* 221 P.3d at 74 (same). Second, the claimant must prove that "justice requires recognizing the substance of the relationship between the person or entity sought to be held liable and the corporation over the form because the corporate fiction was 'used to perpetrate a fraud or defeat of a rightful claim.'" *McCallum,* 221 P.3d at 74 (quoting in part *In re Phillips,* 139 P.3d at 644). Third, the court must consider whether holding the individual liable for the corporate obligation is equitable under all the relevant circumstances. *See In re Phillips,* 139 P.3d at 644; *McCallum,* 221 P.3d at 74.

¶ 27 The district court made findings as to all three of these elements. Defendants, however, challenge only the court's findings under the first and second elements. More specifically, defendants do not challenge the court's underlying factual findings, but challenge the court's ultimate conclusions that Mr. Martin had proved the first two elements. I agree with the majority that our review of these conclusions is de novo. *See McCallum*, 221 P.3d at 73.

¶ 28 As to the first element, I believe the district court's conclusion presents a close question. Some of the facts relied on by the district court and the majority do not show disregard of the corporate form, but rather were common, permissible, and unremarkable circumstances or acts consistent with (or at least not inconsistent with) proper regard for the Tradewinds' separate existence.[1] But for present purposes I accept that the first element is satisfied.

¶ 29 As to the second element, however, I believe the district court's factual findings preclude a result favorable to Mr. Martin under the governing law, and that both the district court and the majority have applied this element in a manner inconsistent with the principle underlying it.

¶ 30 My disagreement with the district court and the majority stems from my understanding of the requirement that the claimant prove that the corporate form was misused to perpetrate fraud or defeat a rightful claim. More precisely, because, as the district court noted, "[n]o allegation of fraud is at issue in this case," the outcome here turns on the proper application of the requirement to prove misuse of the corporate form to defeat a rightful claim.

¶ 31 Clearly, the mere fact that the creditor would not be paid absent piercing of the corporate veil is not enough. *McCallum*, 221

P.3d at 78 (citing *Lowell Staats Mining Co.*, 878 F.2d at 1265). In *Fink*, the supreme court held that it must be shown "either that the corporate entity was used to defeat public convenience, or to justify or protect wrong, fraud or crime...." *Fink*, 161 Colo. at 350, 421 P.2d at 739; *see also LaFond v. Basham*, 683 P.2d 367, 369 (Colo.App.1984) ("promote injustice, protect fraud, defeat a rightful claim, or defend crime"); *Rosebud*, 39 Colo.App. at 88, 561 P.2d at 371. The next year, the supreme court said that there must be a showing of "fraud or some other wrong being perpetrated...." *Contractors Heating & Supply Co. v. Scherb*, 163 Colo. 584, 587, 432 P.2d 237, 239 (1967). And one year after that, the supreme court, quoting a much earlier case, characterized this requirement as a showing that the individual conducted business through the corporation " 'as a means of accomplishing a fraud or an illegal act.' " *Lavach*, 165 Colo. at 437, 439 P.2d at 361 (quoting *Gutheil v. Polichio*, 103 Colo. 426, 431, 86 P.2d 972, 974 (1939)). In *Micciche*, 727 P.2d at 373, the supreme court articulated the type of conduct required as being "for the purpose of defeating or evading important legislative policy, or in order to perpetrate a fraud or wrong on another...."

¶ 32 More recent decisions have reinforced the notion that a showing of at least wrongful conduct is required. For instance, in *In re Phillips*, 139 P.3d at 644, the supreme court held that the claimant must prove that "the corporate structure is used to perpetrate a wrong," and that the corporate veil may be pierced "[o]nly when the corporate form was used to shield a dominant shareholder's improprieties...." *See also McCallum*, 221 P.3d at 78; *Sheffield Services Co. v. Trowbridge*, 211 P.3d 714, 720 (Colo.App.2009) (applying veil piercing to a limited liability company).

---

1. For example, the court noted that Mr. Freeman was the sole member of the LLC. *See Industrial Comm'n v. Lavach*, 165 Colo. 433, 437, 439 P.2d 359, 361 (1968) (fact stock is owned by a single shareholder is not grounds for disregarding the corporate entity); *see also Lowell Staats Mining Co.*, 878 F.2d at 1263 (same). The court also noted that Mr. Freeman had contributed substantial capital to the LLC. *See Hill v. Dearmin*, 44 Colo.App. 123, 125, 609 P.2d 127, 128 (1980) (contributing funds to, or on behalf of, a corporation is not indicative of misuse of the corporate form). And the court also found that Mr. Freeman had received the proceeds of the airplane sale. As discussed below, however, the court found that this was a lawful distribution, and given that the sale effectively ended the LLC's business, it is logical that the sole member would receive the proceeds of that sale.

¶ 33 Though the cases contain somewhat different language, it is clear to me that the claimant must show, in the absence of blatant circumvention of a legislative policy or fraud, that the individual sought to be held liable must have misused the corporate form in a manner that, if not criminal, was at least unlawful or *intended* to defeat a claim. *See also* 1 *Fletcher Cyclopedia of the Law of Corporations* § 45.10, at 125–30 (2006) (the alter ego doctrine is intended "to hold the individuals responsible for their acts knowingly and intentionally done in the name of the corporation"), 144 (the plaintiff must show that the individual used his control over the corporation "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of the plaintiff's rights").[2] Any lower standard would fail to give meaningful content to the supreme court's consistent references to "wrongful" conduct and would make veil piercing less than the "extraordinary" remedy it has always been intended to be.

¶ 34 This view is borne out by the few Colorado cases finding that the corporate veil should be pierced. For example, piercing the corporate veil has been found to be appropriate when a shareholder, officer, or director drained the corporation of funds so as to avoid paying a known creditor or a potential judgment in an existing lawsuit against the corporation. *See McCallum,* 221 P.3d at 79 (removal of all corporate funds to avoid paying debt owed to the corporation's lessor); *Sheffield Services,* 211 P.3d at 722 (manager of a limited liability company "concealed" transactions and actively transferred funds for the purpose of frustrating claims against the entity); *LaFond,* 683 P.2d at 369–70 (president and general manager took corporate funds to avoid paying builder for home remodeling work contracted for by the corporation); *Rosebud Corp.,* 39 Colo.App. at 86–

89, 561 P.2d at 369–71 (director "converted" corporate funds to avoid paying lender's promissory note).

¶ 35 Applying this understanding of the second element of the veil piercing test to the facts as found by the trial court, I conclude that the district court erred in piercing the LLC veil. The district court's analysis focused entirely on Tradewinds' sale of its most significant asset—the airplane—and the fact that the proceeds of that sale were distributed to Mr. Freeman. After reciting the requirement that Mr. Martin prove the corporate form was used to defeat a rightful claim, the court said: "Martin's cost award goes unpaid if the entity shield is recognized." But as to the sale of the airplane and the distribution to Mr. Freeman specifically, the district court expressly found:

- Tradewinds sold the airplane "to a third party in an arm's length transaction for a gross price of $285,000."
- "The parties are characterizing the payment of the proceeds of the sale of the airplane as a distribution to Freeman."
- "Freeman was not aware of any impropriety or financial recklessness of the transfer."
- "[T]o the best of [Mr. Freeman's] knowledge, all of the known *or reasonably possible debts* of the entity were fully provided for at the time of the distribution." (Emphasis added.)[3]
- "Freeman actually and reasonably believed at the time [of the sale and distribution that Tradewinds] had more than sufficient value to cover *any* reasonably possible obligation on the horizon for the corporate entity." (Emphasis added.)
- The distribution was lawful under section 7–80–606.

¶ 36 The court also found that the airplane was Tradewinds' "primary hard asset." Indeed, the airplane was Tradewinds' reason

---

2. As the division held in *McCallum,* there is no requirement that the claimant prove conduct specifically directed at the creditor. *McCallum,* 221 P.3d at 78.

3. The majority discounts this finding because the court made it in the context of resolving Mr. Martin's claim under section 7–80–606, C.R.S. 2011 (which imposes limits on distributions to members of a limited liability company). But the finding was one of fact, pertaining directly to the state of affairs and Mr. Freeman's state of mind at the time of the sale. It is, in my view, the factual finding most relevant to the proper inquiry under the second element, so I do not see how it can be ignored.

for existing. Once Tradewinds no longer owned the airplane, it made sense that the business would be "closed" (as the district court found) and its funds taken by its sole member. It also must be remembered that the sale and transfer occurred two years before *any* obligation to Mr. Martin arose. Mr. Martin did not assert any counterclaim against Tradewinds in the underlying litigation. He was, at best, a *potential* creditor of Tradewinds. He would have no claim against Tradewinds absent the occurrence of a far from certain contingency. And Tradewinds had posted a cost bond, the amount of which Mr. Martin never asked the court to increase, and, as the district court found, had other assets.[4]

¶ 37 Viewing the district court's findings and other relevant circumstances as a whole, it appears to me that the district court concluded, in essence, that because the distribution of the proceeds of the sale to Mr. Freeman rendered Tradewinds unable to pay a future contingent obligation related to the prosecution of the litigation, the second element was satisfied.[5] The majority appears to have concluded likewise. As I hope I have made clear above, I do not believe that a mere showing of cause and effect is sufficient under the controlling authority.

¶ 38 Thus, I conclude that Mr. Martin failed to prove that Mr. Freeman engaged in any wrongful conduct as required to pierce the LLC veil. *Cf. Lavach,* 165 Colo. at 436–37, 439 P.2d at 360–61 (fact that the corporation could not pay employee's workers' compensation claim did not justify piercing the corporate veil where there was not showing the corporate form was used to accomplish fraud or an illegal act); *In re Death of Smithour,* 778 P.2d 302, 303–04 (Colo.App. 1989) (corporation's failure to maintain work-

ers' compensation insurance was insufficient to hold shareholders-officers liable for injured employee's judgment against the corporation); *Hill,* 44 Colo.App. at 124–25, 609 P.2d at 128–29 (where shareholder loaned money to the corporation and guaranteed certain corporate debts, but there was no evidence he did so to perpetrate a fraud or promote his personal affairs, piercing the corporate veil was improper). Therefore, I respectfully dissent.

---

4. The majority characterizes the airplane as Tradewinds' "only meaningful asset." I do not believe that characterization can be reconciled with the district court's findings. I also take issue with the majority's assertion that the proceeds of the sale were "diverted" to Mr. Freeman. That term carries a connotation at odds with the district court's findings that Mr. Freeman received the funds through a lawful distribution from the LLC, with no knowledge that the LLC would be unable to pay "any reasonably possible" obligation.

5. The district court did say that Mr. Freeman "drain[ed] the entity of assets such that it did not have the assets needed to pay the expenses of ongoing litigation." But it also found that Mr. Freeman continued to pay the litigation expenses. And the court also found, as discussed above, that Mr. Freeman had no knowledge of any potential claim by Mr. Martin or wrongful intent when he took the distribution.