**McCALLUM FAMILY L.L.C.,**
**Plaintiff–Appellant,**

v.

**Marc WINGER and Karen Winger,**
**Defendants–Appellees.**

No. 09CA0212.

Colorado Court of Appeals,
Div. VII.

Oct. 29, 2009.

Opinion by Judge TERRY.

In this appeal, we address four issues relating to potential personal liability of a corporate shareholder and another corporate insider who is not a shareholder, officer, or director. We first apply section 13–25–127(1), C.R.S.2009, and conclude that the burden of proof in an action to pierce the corporate veil is by a preponderance of the evidence, not by clear and convincing evidence, as has sometimes been incorrectly stated. Next, we conclude that, in appropriate circumstances, the corporate veil may be pierced to impose personal liability on a corporate insider who is not a shareholder, officer, or director. We then address the types of conduct that constitute defeating the rightful claims of creditors, such that the veil may be pierced. Finally, we discuss the circumstances in which a corporate shareholder may be liable to a creditor for breach of fiduciary duty.

Plaintiff, McCallum Family, L.L.C. (McCallum), appeals the judgment, entered after a trial to the court, in favor of defendants, Marc Winger and Karen Winger. We affirm in part, reverse in part, and remand for further proceedings.

## I. Undisputed Facts

McCallum presented the following evidence at trial, and defendants did not contest it:

Marc Winger managed Manitoba Investment Advisors, Inc., a Wyoming corporation authorized to do business in Colorado. During Manitoba's corporate existence, Marc Winger was married to Vicki Winger, who was a director, 50% shareholder, and president of Manitoba. Marc Winger's mother, Karen Winger, was a director, 50% shareholder, vice president, and secretary of Manitoba.

Although Marc Winger was not a shareholder, officer, or director of Manitoba, he admittedly "managed the entire business." He routinely used corporate funds to pay his personal bills, including $95,400 paid to the State of California as a result of his felony conviction there for failure to pay sales taxes.

Manitoba entered into a commercial triple-net lease, with McCallum as lessor, for real property in Grand Junction, Colorado, from which it ran a mobile home sales operation. Manitoba did not pay Mesa County property taxes as required by the lease for 2003, 2004, and part of 2005, and it vacated the property seven months before the end of the lease term, defaulting on the remaining rent. McCallum obtained a judgment against Manitoba for $76,224.

The parties stipulated that Manitoba was insolvent beginning in September 2004. The corporation was administratively dissolved on May 31, 2006.

## II. Burden of Proof

McCallum asserted a claim to pierce the corporate veil and hold Marc Winger personally liable for the debt owed by Manitoba. McCallum contends the trial court erred in applying a clear and convincing burden of proof, rather than a preponderance of the evidence burden, to this claim. We agree.

The proper burden of proof is a question of law which we review de novo. *Microsemi Corp. v. Broomfield County Bd. of Equalization,* 200 P.3d 1123, 1124 (Colo.App.2008). We apply section 13–25–127(1), which states

that "the burden of proof in any civil action shall be by a preponderance of the evidence," and conclude that this burden is applicable in cases where a party seeks to pierce the corporate veil, in the absence of issues of constitutional concern.

Here, the trial court relied on language in *In re Phillips,* 139 P.3d 639, 644 (Colo.2006), to determine that the burden of proof for McCallum's veil-piercing claim was "clear and convincing" evidence. In *Phillips,* the supreme court answered a question that had been certified by the United States District Court for Colorado. *Id.* at 639. Given that the opinion does not discuss section 13–25–127(1), it is fair to assume the parties did not raise it and the court did not consider it. In any event, because the proper burden of proof was outside the scope of the question certified by the federal court and decided by the supreme court, the court's statement that the burden of proof is by "clear and convincing evidence," 139 P.3d at 644, is mere dictum which is not binding on us. We are not persuaded otherwise by *Contractors Heating & Supply Co. v. Scherb,* 163 Colo. 584, 588, 432 P.2d 237, 239 (1967) ("[t]he corporate form ... will not be disregarded unless a clear showing is made that it was used to perpetrate a fraud or defeat a rightful claim"), because that decision predated the 1972 adoption of section 13–25–127(1).

When the Colorado Supreme Court faced a conflict between the "preponderance" burden of proof set forth in section 13–25–127(1) and its own precedent applying a different burden, it held that the statute prevails over conflicting appellate case law. *Gerner v. Sullivan,* 768 P.2d 701, 705–06 (Colo.1989) (overruling *Raftopoulos v. Monger,* 656 P.2d 1308 (Colo.1983)). In *Gerner,* the court noted that it would decline to apply the statutory burden of proof only if there were issues of constitutional concern. *Id.* at 704.

Because section 13–25–127(1) provides that, with certain exceptions not relevant here, the applicable burden of proof is a preponderance of the evidence, and no issues of constitutional concern were raised in the trial court, that court erred by not applying the preponderance burden of proof. As discussed below, McCallum established the first two prongs of the veil-piercing test, leaving only the determination of whether the third prong was proved. Therefore, we remand to the trial court so that it may determine whether McCallum met its burden to prove, by a preponderance of the evidence, the third prong for piercing the corporate veil.

### III.   McCallum's Piercing the Corporate Veil Claim

McCallum next argues that the trial court erred by declining to pierce the corporate veil to hold Marc Winger personally liable for the judgment against Manitoba. We conclude, based on the undisputed evidence presented at trial, that McCallum established a prima facie case for piercing the corporate veil against Marc Winger. Therefore, we remand to the trial court for further findings under the correct burden of proof.

### A.   Requirements for Piercing the Corporate Veil

In a typical case, a determination whether to pierce the corporate veil is a mixed question of law and fact. When faced with such a mixed question, we normally defer to the trial court's findings of historical fact, and review de novo its application of the law to those facts. *See Sheridan Redevelopment Agency v. Knightsbridge Land Co.,* 166 P.3d 259, 262 (Colo.App.2007).

This, however, is the unusual case where the controlling facts pertinent to the first two prongs of the three-pronged veil-piercing analysis are undisputed. Thus, we do not defer to the trial court's conclusions of law based on those facts, but rather make an independent judgment on the merits concerning those two prongs. *See Hinojos v. Lohmann,* 182 P.3d 692, 694–95 (Colo.App. 2008).

In general, a corporation is treated as a legal entity separate from its shareholders, officers, and directors. This permits shareholders to invest with the assurance that they will not be held personally liable for the corporation's debts. *Phillips,* 139 P.3d at 643–44; *Micciche v. Billings,* 727 P.2d 367, 372–73 (Colo.1986); John E. Moye, *The Law of Business Organizations* 87 (3d ed.1989).

Indeed, insulation from individual liability is an inherent purpose of incorporation. *Phillips,* 139 P.3d at 643; *Leonard v. McMorris,* 63 P.3d 323, 330 (Colo.2003).

■ The fiction of the corporate veil isolates "the actions, profits, and debts of the corporation from the individuals who invest in and run the entity." *Phillips,* 139 P.3d at 643; *see Micciche,* 727 P.2d at 369 (citing Cathy S. Krendl & James R. Krendl, *Piercing the Corporate Veil: Focusing the Inquiry,* 55 Den. L.J. 1 (1978)). Only extraordinary circumstances justify disregarding the corporate entity to impose personal liability. *Phillips,* 139 P.3d at 644; *Leonard,* 63 P.3d at 330.

■ To determine whether it is appropriate to pierce the corporate veil, a court must make a three-part inquiry. *Phillips,* 139 P.3d at 644; *Micciche,* 727 P.2d at 372–73.

■ First, the court must determine whether the corporate entity is the "alter ego" of the person or entity in issue. *Phillips,* 139 P.3d at 644; *Fink v. Montgomery Elevator Co.,* 161 Colo. 342, 350, 421 P.2d 735, 739 (1966). Courts consider a variety of factors in determining status as an alter ego, including whether (1) the corporation is operated as a distinct business entity; (2) funds and assets are commingled; (3) adequate corporate records are maintained; (4) the nature and form of the entity's ownership and control facilitate misuse by an insider; (5) the business is thinly capitalized; (6) the corporation is used as a "mere shell"; (7) legal formalities are disregarded; and (8) corporate funds or assets are used for non-corporate purposes. *Phillips,* 139 P.3d at 644; *Leonard,* 63 P.3d at 330. This inquiry looks to the specific facts of each case, and not all of the listed factors need to be shown in order to establish alter ego status. *See Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC,* 37 P.3d 485, 490 (Colo.App.2001); Krendl & Krendl, 55 Den. L.J. at 59 ("Each case must be decided on the basis of its unique factors. Efforts at simplistic rules ... may have disastrous effects.... [C]ourts [should] continue [the] delicate balancing act" of considering the equities of the situation).

Second, the court must determine whether justice requires recognizing the substance of the relationship between the person or entity sought to be held liable and the corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." *See Phillips,* 139 P.3d at 644; *Reader v. Dertina & Assocs. Mktg., Inc.,* 693 P.2d 398, 399 (Colo.App.1984) (veil piercing applies "where the corporate entity has been used to defeat public convenience, or to justify or protect wrong, fraud, or crime, or in other similar situations where equity requires"); *see also Sheffield Servs. Co. v. Trowbridge,* 211 P.3d 714, 721–22 (Colo.App.2009) (applying veil piercing to manager of limited liability company).

Third, the court must consider whether an equitable result will be achieved by disregarding the corporate form and holding a shareholder or other insider personally liable for the acts of the business entity. *Phillips,* 139 P.3d at 644; *Sheffield,* 211 P.3d at 721–22; *see also Great Neck Plaza,* 37 P.3d at 490 ("Piercing the corporate veil is an equitable remedy, requiring balancing of the equities in each particular case.").

■ All three prongs of the analysis must be satisfied. The paramount goal of piercing the corporate veil is to achieve an equitable result. *Phillips,* 139 P.3d at 644; *Water, Waste & Land, Inc. v. Lanham,* 955 P.2d 997, 1004 (Colo.1998); *Great Neck,* 37 P.3d 485 at 490.

### B. Piercing the Corporate Veil as to One Who is Not a Shareholder, Officer, or Director

■ McCallum contends that, although Marc Winger was not a shareholder, officer, or director, the corporate veil should be pierced to impose personal liability on him for the judgment against Manitoba. We conclude that the veil-piercing doctrine may be applied to include corporate insiders such as Marc Winger.

The doctrine of corporate veil piercing is most often applied to impose liability on corporate shareholders, because that is the context in which the issue usually arises. *See Phillips,* 139 P.3d at 644; *Contractors Heat-*

*ing,* 163 Colo. at 587–88, 432 P.2d at 239. However, "the mere existence or nonexistence of formal stock ownership is not necessarily conclusive" in determining whether the corporate veil may be pierced. Fletcher, *Cyclopedia of Corporations* § 41.10, at 141 (2006); *see also* Krendl & Krendl, 55 Den. L.J. at 24 (stock ownership not absolute requirement for piercing veil; "[a] more precise requirement is that the dominant party must have some beneficial interest in" the corporation).

Colorado precedents have recognized that the doctrine may be employed to impose individual liability on non-shareholder corporate insiders, including corporate officers and managers of limited liability companies. In *LaFond v. Basham,* 683 P.2d 367, 369–70 (Colo.App.1984), a division of this court expanded the doctrine to impose personal liability on a defendant who was not a corporate shareholder, but was an officer and member of the board of directors of the two corporations in issue; controlled all the policy and activity of the corporations; dominated his wife and son, who were the only shareholders; solely determined when he would draw money from the corporations; and insisted that his loans to the corporations be repaid in preference to other creditors. Another division of this court recently held that the corporate veil could be pierced to hold liable a non-member manager of a limited liability company who appropriated corporate assets as his own. *Sheffield,* 211 P.3d at 721–22; *cf. Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 778 F.Supp. 1116, 1124 (D.Colo.1991) (applying Colorado law) (declining to hold the defendant liable as an alter ego of a corporation where he was not a shareholder, and other criteria for piercing the corporate veil were not met).

*LaFond* and *Sheffield* are consistent with the rationale underlying corporate veil piercing. As numerous cases and commentators have established, the veil may be pierced and the corporation treated as an alter ego where the corporate form has been abused; the corporate entity has been used as a subterfuge and to observe it would work an injustice; the party sought to be held liable has dominance and control over the corporation

and uses the corporate entity as a mere instrumentality for the transaction of that party's own affairs; there is such a unity of interest and ownership that the separate personalities of the corporation and the party do not exist; and to allow the corporate fiction to persist would promote injustice or protect fraud. *See Fink,* 161 Colo. at 350, 421 P.2d at 739; 1 Fletcher, *Cyclopedia of Corporations* §§ 41, 41.1, 41.10. Where the party sought to be held liable exercises an extensive level of control over the corporation, such control may be an important factor in determining whether to pierce the veil. *LaFond,* 683 P.2d at 369–70; 1 Fletcher, *Cyclopedia of Corporations* § 41.10, at 141; Krendl & Krendl, 55 Den. L.J. at 25–27 ("domination should be addressed as a threshold question; if it is found to exist, one can then move on to the issue of whether the domination was used for an improper purpose").

Where a corporate insider exercises substantial control over the corporation, uses the corporate form to transact his personal business, and treats corporate funds as though they were his own, as the undisputed evidence shows Marc Winger did here, it would elevate form over substance to allow him to avoid personal liability merely because he has avoided owning stock in his own name and assuming a corporate title such as officer or director. Here, he functioned essentially as a shareholder, officer, or director, was closely related to the shareholders, and used the assets of the corporation fundamentally as his own. Under these circumstances, if the other prongs of the veil-piercing test have been met, the mere fact that Marc Winger did not hold the title of shareholder, officer, or director would not preclude the imposition of personal liability on him.

Our holding is consistent with the tenor of Colorado precedents, as well as with decisions of courts in other jurisdictions that have considered the issue. Those other jurisdictions have concluded that where an individual sought to be held liable for corporate debts exercises sufficient dominion and control over the corporation, that person may be deemed an "equitable owner," and thus an alter ego of the corporation. *See, e.g., Ange-*

lo Tomasso, Inc. v. Armor Constr. & Paving, Inc., 187 Conn. 544, 447 A.2d 406, 412 (1982) (stock ownership is "not a prerequisite to piercing the corporate veil but is merely one factor to be considered in evaluating the entire situation"; nor is status as officer or director required; key factor in deciding to disregard corporate entity is element of control or influence exercised by the party sought to be held liable).

In Labadie Coal Co. v. Black, 672 F.2d 92, 97 (D.C.Cir.1982), the court observed that while a person who controls a corporation may seek to avoid personal liability by not becoming a shareholder, that person's lack of shareholder status is not determinative as to whether the veil will be pierced to hold him or her liable. Instead, the key to determining whether an individual is a corporate alter ego is his or her degree of control. Id. Although the defendant had no formal control over any corporate shares because the stock was in his wife's and children's names, he was the "dominant figure" in the corporation and "[held] the reins," and it was "by his actions alone that a relationship with [the] plaintiff was established and business transacted." Id. These facts, combined with an indication of inadequate capitalization and failure to maintain corporate records and observe corporate formalities, formed the basis of the court's decision to remand for reconsideration of the plaintiff's veil-piercing claim. Id. at 98–100.

Other jurisdictions that have adopted the equitable ownership doctrine include:

- Illinois: Fontana v. TLD Builders, Inc., [362 Ill.App.3d 491, 298 Ill.Dec. 654]840 N.E.2d 767, 778–79 (2005) (corporate veil pierced against non-shareholder who exercised degree of ownership and control over corporation such that there was no separate personality between him and the corporation, and sole shareholder was his wife, who was a "non-functioning" officer or director); Macaluso v. Jenkins, [95 Ill.App.3d 461, 50 Ill.Dec. 934]420 N.E.2d 251, 255–56 (1981) (sufficient unity of interest existed to pierce corporate veil where the defendant, who did not own shares in not-for-profit corporation, intended to "profit" from the corporation and exercised such a degree of ownership and control that separate personalities of corporation and the defendant did not exist; because veil piercing is an equitable remedy, it is proper to look to substance rather than form in determining whether to hold a non-shareholder personally liable for a corporation's debts).

- Minnesota: Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole, 766 N.W.2d 334, 339–40 (Minn.Ct.App.2009) (allowing veil piercing against parties who were not corporate shareholders or members, where they were treated like officers or directors, and were actively involved in managing the entities in issue; reasoning that courts favor reality over form in determining a party's involvement in a corporate enterprise and that otherwise "unscrupulous parties could avoid personal liability" by avoiding formal ownership interests).

- New York: Freeman v. Complex Computing Co., 119 F.3d 1044, 1051 (2d Cir. 1997) (applying New York law) ("an individual who exercises sufficient control over the corporation may be deemed an 'equitable owner,' notwithstanding the fact that the individual is not a shareholder of the corporation" (citing Guilder v. Corinth Constr. Corp., [235 A.D.2d 619]651 N.Y.S.2d 706, 707 (N.Y.App.Div. 1997))) (although the Freeman defendant was not an actual shareholder, officer, director, or employee, the court treated him as an equitable owner because he " 'exercise[d] considerable authority over [the corporation] . . . to the point of completely disregarding the corporate form and acting as though [its] assets [were] his alone to manage and distribute' " (quoting Lally v. Catskill Airways, Inc., [198 A.D.2d 643]603 N.Y.S.2d 619, 621 (N.Y.App.Div.1993))).

We conclude that an individual should not be able to defeat the alter ego prong of the veil-piercing analysis merely because he or she has no formal ownership interest in the corporation, and does not hold the title of officer or director. The proper inquiry is into the substance of the corporation's gover-

nance as well as its form. When an individual demonstrates great dominion and control over a corporation, and especially over corporate assets, the lack of such a formal role or title will not necessarily impede a finding of personal liability for corporate activities. An individual who acts as a de facto shareholder, officer, or director may be treated as an equitable owner and held to be the alter ego of a corporation.

Here, the undisputed evidence showed that Marc Winger essentially functioned as an owner, and "managed the whole affair." As in *LaFond, Labadie* and *Fontana,* he was closely related to both shareholders of the company, his mother and his wife, the latter of whom he admitted was a shareholder and officer in name only. Together with his wife, he made decisions as to how much to pay to himself and creditors. The undisputed testimony at trial was that neither of the nominal shareholders properly supervised his activities.

Although Marc Winger did not sign the lease in issue here, his father signed it under the pseudonym "John Warner." No evidence established that the father had any legitimate role in the business. A reasonable fact finder could conclude that the father signed the lease under a pseudonym for improper reasons, such as to give an appearance that Marc Winger was not the alter ego of the corporation and to assist him in evading personal liability for the lease obligation. In any case, Marc Winger conducted nearly all of Manitoba's business with McCallum, including signing checks and handling lease renegotiations.

In addition, Marc Winger took a number of "distributions" from Manitoba even though he was not a shareholder. This is another indication that he was a de facto owner, because, ordinarily, distributions are paid to corporate shareholders. *See* § 7–101–401(13), C.R.S.2009 ("distribution" is a "direct or indirect transfer by a corporation of money or other property, except its own shares, or incurrence of indebtedness by a corporation, to or for the benefit of any of its shareholders in respect of any of its shares"); *see also Cascade Energy & Metals Corp. v.*

*Banks,* 896 F.2d 1557, 1573 (10th Cir.1990) (applying Utah law).

He routinely used corporate funds to pay personal bills for himself and his wife, including payment of his California sales tax obligation and outlays for a boat, cell phone, and personal credit cards. McCallum's expert witness in public accounting opined that corporate funds invested in outside real estate projects appeared to have garnered profits that should have been applied to business operations but were not, and that the commingling of Marc Winger's personal funds and company funds was "relatively rampant ... through the whole existence of Manitoba." The expert stated, "Winger treated the company as one of his pockets and wrote checks as he needed money[;] from time to time [he] would put some money back in, but overall [he] treated the company as if it didn't exist." He further opined that "the Wingers ultimately removed all available funds from Manitoba."

This undisputed evidence showed that the corporation lacked "economic substance." *See* Krendl & Krendl, 55 Den. L.J. at 35 (noting that "lack of economic substance should be understood to cover a variety of evils in addition to undercapitalization ... [including] cases, closely akin to fraudulent transfers, where a shareholder milks all of the assets out of the corporation," as well as cases where a corporation is operated unprofitably "such that all of the profits of the transaction are reaped by the dominant party").

The evidence adduced at trial established that:

- Marc Winger exercised such a degree of control and dominance over Manitoba's affairs that he should be treated as an equitable owner;
- Manitoba was not operated as a distinct business entity;
- corporate funds were commingled with personal funds, and were used for non-corporate purposes;
- the nature and form of Manitoba's ownership and control facilitated misuse by Marc Winger as an insider;

- the corporation lacked economic substance; and
- the corporation was used as a mere shell.

Therefore, we conclude Marc Winger was the alter ego of Manitoba. *See Phillips*, 139 P.3d at 644; *Leonard*, 63 P.3d at 330.

This does not end the veil-piercing inquiry, however. A finding that a party is the alter ego of a corporation satisfies only the first prong of the three-part veil-piercing test. *See Phillips*, 139 P.3d at 644. We now address the latter two prongs of the test.

### C. Using the Corporate Fiction to Perpetrate a Fraud or Defeat a Rightful Claim

■ The second prong of the veil-piercing test is whether justice requires recognizing the substance of the relationship between the corporation and the person or entity sought to be held liable over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." *See Phillips*, 139 P.3d at 644; *Reader*, 693 P.2d at 399.

The trial court declined to pierce the corporate veil as to Marc Winger because it concluded McCallum was required to prove that Winger had used the corporation to perpetrate a fraud or wrong "in the transaction at issue," and McCallum had presented no evidence that Winger used Manitoba to perpetrate a fraud or wrong against McCallum. McCallum contends this ruling was error, and we agree. As discussed below, the undisputed facts show that McCallum established that Marc Winger used the corporate form to defeat McCallum's rightful claim.

■ The second prong of the veil-piercing inquiry reflects a recognition that the corporate veil may be pierced "[o]nly when the corporate form was used to shield a dominant shareholder's improprieties." *Phillips*, 139 P.3d at 644; *see Indus. Comm'n v. Lavach*, 165 Colo. 433, 436–37, 439 P.2d 359, 361 (1968). The mere fact that corporate creditors would go unsatisfied because they cannot reach a shareholder's personal assets does not, alone, justify piercing the corporate veil. *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1265 (10th Cir.1989) (applying Colorado law).

Here, the trial court noted that Marc Winger did not sign the lease; no evidence was presented that he conspired with his father or anyone else to mismanage Manitoba or divert its assets to avoid its liability under the lease; there was no evidence that McCallum had investigated Manitoba's financial circumstances before renting to it; and "Manitoba apparently lived up to its obligations under the lease (except for paying . . . property taxes) for four or five years."

Citing *Angelo Tomasso, Inc.*, 447 A.2d at 412–13, and *Walk–In Medical Ctrs.*, 778 F.Supp. at 1123–24, the trial court stated that "[a] plaintiff must show that the defendant used the corporation to perpetrate a fraud or wrong in the transaction in issue."

■ While we agree with the principle cited by the trial court, it applied the principle too narrowly here. To satisfy this second prong of the test, a plaintiff may show *either* fraud *or* that the corporate form was abused to defeat the rightful claims of creditors. There is no additional requirement to prove any conduct specifically *directed at the plaintiff-creditor*. *See Phillips*, 139 P.3d at 644. However, the creditor seeking to pierce the veil must show an *effect* on its lawful rights as a creditor resulting from abuse of the corporate form. *See Krendl & Krendl*, 55 Den. L.J. at 27–28 (there must be a reasonable relationship between the injury suffered by the plaintiff and the actions of the defendant; the plaintiff must prove an injury resulting from misuse of the corporation; this requirement "offers some assurance that the plaintiff has standing to complain, thereby tending to discourage frivolous claims"); *see also Gutheil v. Polichio*, 103 Colo. 426, 430–32, 86 P.2d 972, 974 (1939) (court disregarded corporate fiction where husband fraudulently conveyed corporate real estate to wife and thereby defeated creditor's claim); *Rosebud Corp. v. Boggio*, 39 Colo.App. 84, 88–89, 561 P.2d 367, 371 (1977) (evidence supported veil-piercing claim against director of insolvent corporation who sold corporate assets and converted proceeds for his personal use, defeating valid claims of holders of promissory note); *Reader*, 693 P.2d at 399 (veil pierced

to hold liable sole shareholder who sought to avoid paying benefits to brokers under a contract and used corporate entity as instrumentality for transaction of his own affairs, where adherence to corporate form would promote injustice); *Ward v. Cooper,* 685 P.2d 1382, 1383–84 (Colo.App.1984) (veil pierced to hold shareholder personally liable to plaintiff-creditor, where shareholder was alter ego of corporation and had acted to prefer one creditor over another, and effect of shareholder's action defeated plaintiff-creditor's claim).

Here, McCallum showed that the corporate form was abused in a manner that defeated its rightful claim as a creditor of Manitoba. It presented evidence, through its accounting expert, that "the Wingers ultimately removed all available corporate funds from Manitoba," thus leaving no funds in that corporation to satisfy the debt owed to McCallum. It demonstrated that profits garnered from real estate in which corporate funds had been invested should have been applied to business operations, but were not. Defendants did not contest any of the evidence showing that Marc Winger's actions placed what should have been corporate funds out of McCallum's reach, thereby defeating its rightful claim. We conclude this uncontested evidence satisfied the second veil-piercing prong, without any additional showing that Marc Winger's activity was directed specifically at defeating McCallum's rights.

### D. The Equity Prong

█ McCallum argues that equity requires piercing the corporate veil as to Marc Winger. By establishing the first two prongs of the veil-piercing analysis, McCallum made a prima facie case for application of the trial court's equitable discretion to pierce the veil. However, whether to exercise that discretion must be determined in the first instance by the trial court, and thus we remand for the trial court to consider this issue.

█ Because the paramount goal of piercing the corporate veil is to achieve an equitable result, the determination whether to pierce is entirely within the trial court's equitable discretion. *Phillips,* 139 P.3d at

644; *Great Neck,* 37 P.3d at 490. In applying this third prong, the court must inquire whether "an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity." *Phillips,* 139 P.3d at 644; *see Great Neck,* 37 P.3d at 490. This prong emphasizes that corporate veil piercing is a fact-specific, equity-based doctrine. *Phillips,* 139 P.3d at 644; *Micciche,* 727 P.2d at 372–73 ("In the absence of a fully developed factual record and adequate findings of fact, ... we cannot determine whether that equitable doctrine should be applied here.").

McCallum demonstrated that the first two veil-piercing prongs were satisfied, and presented a prima facie case for the application of the court's equitable discretion to pierce the corporate veil. However, because the trial court must determine in the first instance whether the equities of the situation merit veil piercing here, we remand to the trial court to make this determination, applying the principles of law we have set forth herein.

### IV. McCallum's Claim for "Breach of Duties Owed to Creditors of an Insolvent Corporation"

Finally, McCallum contends the trial court erred in rejecting its claim that Karen Winger breached a duty owed to creditors of the insolvent corporation "not [to] transfer corporate property for [her] own benefit and, thus, defeat a creditor's claim." Under the facts presented here, we disagree.

█ In support of its assertion that Karen Winger owed it a duty, McCallum relies on *Alexander v. Anstine,* 152 P.3d 497, 498 (Colo.2007) ("[Under our common law] [o]fficers and directors of an insolvent corporation owe creditors a duty to avoid favoring their own interests over creditors' claims."). However, this common law rule arguably conflicts with section 7–108–401(5), C.R.S.2009. As amended in 2006, that statute provides that a "director or officer of a corporation, in the performance of duties in that capacity, shall not have any fiduciary duty to any creditor of the corporation arising only from the status

as a creditor." In *Alexander*, the supreme court expressed "no opinion on whether [the 2006 amendment to the statute] applies where a corporation is insolvent." *Alexander*, 152 P.3d at 502 n. 9.

Assuming, without deciding, that the common law principles noted in *Alexander* would apply to impose on Karen Winger a duty to creditors once the corporation became insolvent, we conclude the trial court did not err in rejecting McCallum's claim against her. The distributions she received predated the stipulated September 2004 date of corporate insolvency, and although McCallum's accounting expert opined extensively on Manitoba's financial condition, there was no evidence the corporation was insolvent before that date, or that the distributions to her caused or contributed to the corporation's insolvency.

McCallum argues that Manitoba was "never successful financially." However, simply operating at a loss does not necessarily constitute insolvency. *See Paratransit Risk Retention Group Ins. Co. v. Kamins*, 160 P.3d 307, 318 (Colo.App.2007) (describing factors to be applied in determining corporate insolvency); *Walton v. First Nat'l Bank*, 13 Colo. 265, 273, 22 P. 440, 442 (1889) (defining insolvency as "inability to fulfill one's obligations according to his undertaking, and general inability to answer in court for all of one's liabilities existing and capable of being enforced; not an absolute inability to pay at some future time, ... but ... not being in condition to pay one's debts in the ordinary course, as persons carrying on trade usually do"); *Glenn Justice Mortgage Co. v. First Nat'l Bank*, 592 F.2d 567, 572–73 (10th Cir. 1979) (applying Colorado law) ("While the balance sheet test reflects the general meaning of 'insolvency,' the term is also used to indicate 'the inability of one to pay his debts as they become due in the ordinary course of his business'" (quoting 42 Am.Jur.2d *Insolvency* § 1 (1969))).

The judgment against McCallum on its claims against Marc Winger is reversed, and the case is remanded for further proceedings as directed. In all other respects, the judgment is affirmed.

Judge RUSSEL and Judge J. JONES concur.