23CA1717 GF Conservation v Guire 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1717 Montrose County District Court No. 19CV6 Honorable Mary E. Deganhart, Judge GF Conservation Credit II, LLC, Plaintiff-Appellant, v. Jimmy R. Guire II; Roseanne Madsen Guire; Meadows Ranch, LLC; Tsawhawbitts Meadows Ranch Trust; Tsawhawbitts Meadows Ranch Dynasty Trust; GW 39 Irrevocable Trust; TMR39, LLC; TMR40, LLC; and TMR44, LLC, Defendants-Appellees. ORDER AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division II Opinion by JUDGE GROVE Fox and Sullivan, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 Keiffer, LLC, Jeffrey C. Keiffer, Lone Tree, Colorado, for Plaintiff-Appellant Springer and Steinberg, P.C., Michael P. Zwiebel, Denver, Colorado, for Defendants-Appellees 
1 ¶ 1 Plaintiff, GF Conservation Credit II, LLC (GF), appeals the district court’s order denying its motion for a writ of execution against the property and holdings of defendants, Jimmy R. Guire II, Roseanne Madsen Guire, Meadows Ranch, LLC, Tsawhawbitts Meadows Ranch Trust, Tsawhawbitts Meadows Ranch Dynasty Trust, GW 39 Irrevocable Trust, TMR39, LLC, TMR40, LLC, and TMR44, LLC. We affirm the district court’s order. ¶ 2 Both GF and the defendants request appellate attorney fees and costs. We grant both requests. I. Background ¶ 3 In 2010, GF entered into two contracts for the purchase of roughly $395,000 in conservation easement tax credits from two entities managed or owned by the Guires — Meadows Ranch, LLC and Tsawhawbitts Meadows Ranch Trust (jointly, the transferor entities). GF is a single-member LLC owned by an unidentified natural person (the owner) who is not a party to this case. As a single-member LLC, GF is a “disregarded entity” for federal and state income tax purposes, meaning that the conservation easement tax credits purchased from the transferor entities were passed through to and claimed by the owner. 
2 ¶ 4 Under each tax-credit agreement, the transferor entities warranted that the claimed amounts of tax credits were valid. Additionally, each contract contained an indemnification clause that provided for reimbursement of attorney fees and costs incurred in an action arising from a transferee claim. ¶ 5 Several years after the owner claimed the credits, the owner and the Guires received notice that the Colorado Department of Revenue (CDOR) was challenging the tax credits. Ultimately, CDOR disallowed fifteen percent — or nearly $60,000 worth — of the claimed tax credits. The owner’s representative, not GF, paid the tax liability. ¶ 6 Based on the indemnification clause in the tax-credit agreements, GF sought reimbursement from the transferor entities for the amount of the disallowed credits. The transferor entities declined to indemnify GF. GF, but not the owner, responded by suing both transferor entities. While that lawsuit was pending, the Guires transferred most of the real property from the transferor entities to the various other entity defendants. In response, GF amended its complaint to add all named defendants, alleging that those conveyances were fraudulent. 
3 ¶ 7 Because the owner, and not GF, paid the bill for the disallowed tax credits, the trial court ruled that GF lacked standing to seek relief from the transferor entities because it suffered no damages. A division of this court affirmed that ruling, see GF Conservation Credit II, LLC v. Guire, slip op. at ¶¶ 10, 13 (Colo. App. No. 21CA0043, Apr. 7, 2022) (not published pursuant to C.A.R. 35(e)) (Guire I), but the division also held that GF could recover its attorney fees and costs from the litigation because those amounts arose from the transferor entities’ breach of warranties. Accordingly, the division remanded the case for a determination of attorney fees under the tax-credit agreements. Id. at ¶¶ 33-41. On remand, the trial court granted GF’s request for attorney fees and further ordered that the Guires, Meadows Ranch, LLC, and Tsawhawbitts Meadows Ranch Trust were jointly and severally liable for the attorney fees. ¶ 8 The Guires and the transferor entities appealed the trial court’s order. GF Conservation Credit II, LLC v. Guire, (Colo. App. No. 23CA0078, May 16, 2024) (not published pursuant to C.A.R. 35(e)) (Guire II). For various reasons not relevant to the issues before us, they argued that GF was not entitled to an award of fees 
4 and costs at all. In addition, they argued that the Guires could not be held personally liable for the fee award because they had signed the tax-credit agreements in their capacities as agents for the transferor entities. Id. at ¶ 18. The division concluded that GF was entitled to an award of fees and costs, but it also held that the Guires were not personally liable for that award because they had signed the agreements as agents for the transferor entities. Id. As a result of the division’s holding in Guire II, the transferor entities are the only judgment debtors. ¶ 9 While its appeal in Guire II was pending, GF filed a motion in the district court for a writ of execution to satisfy the attorney fee award. GF requested execution on “property equitably owed [sic] by the current Judgment Debtors: Jimmy R. Guire II, Roseanne Madsen Guire, Meadows Ranch, LLC, and Tsawhawbitts Meadows Ranch Trust, including a Writ against Defendants Tsawhawbitts Meadows Ranch Dynasty Trust, GW39 Irrevocable Trust, TMR39, LLC, TMR40, LLC, TMR44, LLC.”
1 In its motion, GF acknowledged 1 We will refer to the Tsawhawbitts Meadows Ranch Dynasty Trust, GW39 Irrevocable Trust, TMR39, LLC, TMR40, LLC, and TMR44, LLC, collectively, as the non-debtor entities. 
5 that it did not hold a judgment against the non-debtor entities but argued that it should nonetheless be permitted to execute on real property that the non-debtor entities owned, because the Guires fraudulently transferred property from the transferor entities to the non-debtor entities and both sets of entities are owned and controlled by the Guires. GF’s proposed writ of execution did not distinguish between the judgment debtors and the remaining defendants; as proposed, it would direct “any Sheriff in Colorado, specifically including Montrose County,” to “[l]evy upon the property (real, personal, or intangible), goods, chattels, lands and tenements of any of the above named defendants, found in your county to enforce the payment of the December 21, 2022 Judgment.” ¶ 10 The defendants opposed GF’s motion for a writ of execution, arguing that a writ may only be issued against judgment debtors, and that because C.R.C.P. 69 does not allow parties to litigate ownership of real property, GF could not raise fraudulent transfer, veil piercing, or successor liability issues at that stage of the proceedings. ¶ 11 The district court agreed with the defendants. Relying on the holding of Securities Investor Protection Corp. v. First Entertainment 
6 Holding Corp., 36 P.3d 175 (Colo. App. 2001), the court ruled that ownership of property may not be litigated in a C.R.C.P. 69 proceeding and that “the issues of corporate veil piercing and fraudulent conveyance all relate to the ownership of property.” Thus, the court concluded, “[t]he proposed writ of execution is improper because it includes the [non-debtor entities] as judgment debtors even though there is no judgment against them.” ¶ 12 GF filed a motion for partial reconsideration. For the first time, it argued that even if ownership may not be litigated in a C.R.C.P. 69 proceeding, the district court should still grant a writ of execution against the judgment debtors. Before the court could rule on the motion, however, GF filed the instant appeal. The court issued an order denying the motion anyway, noting that (1) GF never sought a writ solely against the judgment debtors and it was inappropriate to raise new arguments in a motion for reconsideration and (2) it had been divested of jurisdiction once the notice of appeal was filed. II. Analysis ¶ 13 GF first contends that the district court erred by declining to issue a writ of execution against the judgment debtors. (After Guire 
7 II, this group includes only the transferor entities.) Second, GF argues that the district court erroneously precluded it from employing alternative collection methods against the non-debtor entities via the C.R.C.P. 69 proceeding. We discern no error in either aspect of the district court’s ruling. ¶ 14 Both parties also request an award of appellate attorney fees. We grant both requests for reasons that we explain further below. A. Writ of Execution Against Judgment Debtors ¶ 15 GF contends that the district court erred by declining to issue a writ of execution against the judgment debtors. Because this issue was not preserved, we do not address it on the merits. See McGihon v. Cave, 2016 COA 78, ¶ 16. ¶ 16 To preserve a matter for appeal, a party must bring the specific issue to the district court’s attention so that the district court may rule on it. JW Constr. Co. v. Elliott, 253 P.3d 1265, 1271-
72 (Colo. App. 2011); Martinez v. People, 2015 CO 16, ¶ 14. While “talismanic language” is not required for preservation, the objection or request must be specific enough to make the court aware of the issue. Martinez, ¶ 14 (quoting People v. Melendez, 102 P.3d 315, 322 (Colo. 2004)). 
8 ¶ 17 GF did not move for a writ of execution solely against the judgment debtors; to the contrary, GF made clear that its request for the writ was not restricted to the judgment debtors. To that end, GF focused the entire motion accompanying the proposed writ on reaching the non-debtors’ assets and argued that the court should issue a broadly worded writ against all of the defendants because the transferor entities had allegedly fraudulently transferred all of their real property to the non-debtor entities. GF’s reply in support of the motion was similarly expansive, and the proposed writ purported to direct the sheriff to “[l]evy upon the property (real, personal, or intangible), goods, chattels, lands and tenements of any of the above named defendants, found in your county to enforce the payment of the December 21, 2022 Judgment.” ¶ 18 After the district court declined to issue the writ, GF moved for reconsideration and, for the first time, requested that the district court issue a writ of execution against the judgment debtors alone. In its order addressing the motion, the district court pointed out that it no longer had jurisdiction over the case because GF had already filed a notice of appeal. But the court also noted that, in its original motion, GF had “sought issuance of the writ against all 
9 named parties,” rather than just the judgment debtors. As a result, the court concluded, GF’s motion for reconsideration was raising a new argument — and “essentially seeking to amend its original [m]otion” — by narrowing the scope of the requested writ of execution. ¶ 19 The order denying GF’s motion for reconsideration made clear that GF failed to timely advance any argument that the court should issue a writ of execution against the judgment debtors alone. Yet in its opening brief on appeal, GF summarily asserts that this issue was preserved because “[t]he issue did not need additional preservation other than the notice of appeal.” We reject that argument. See Briargate at Seventeenth Ave. Owners Ass’n v. Nelson, 2021 COA 78M, ¶ 66 (“Arguments made, as here, for the first time in a post-trial motion are too late and, consequently, are deemed waived for purposes of appeal.”). We also observe that, to the extent that GF develops any substantive argument on appeal as to why the district court should have issued a narrower writ of execution than the one GF originally requested, it does not do so until its reply brief. We do not consider arguments raised for the 
10 first time in a reply brief. Vitetta v. Corrigan, 240 P.3d 322, 330 (Colo. App. 2009). ¶ 20 Because GF did not timely present its arguments regarding the scope of the proposed writ of execution in the district court, they are not preserved and we decline to address them further. B. Writ of Execution Against All Defendants ¶ 21 GF also contends the district court erred by denying its motion for the writ of execution as it was originally proposed. GF argues first that issuing a writ of execution is mandatory, and second that because the transferor entities fraudulently transferred property to the non-debtor entities and the non-debtor entities are under the control of the Guires, the court was required to issue the requested writ against all defendants. We are not persuaded. 1. Standard of Review and Applicable Law ¶ 22 “We review the interpretation of statutes and rules of civil procedure de novo.” Nesbitt v. Scott, 2019 COA 154, ¶ 19. C.R.C.P. 69(a) provides that the “process to enforce a final money judgment shall be by writ of execution.” All non-exempt real property “of every person against whom any judgment is obtained . . . [is] liable to be sold on execution.” § 13-52-102(1), C.R.S. 2023. 
11 ¶ 23 Only the debtor’s property may be executed upon. See, e.g., First Nat’l Bank of Denver v. Dist. Ct., 652 P.2d 613, 616 (Colo. 1982). Additionally, “[w]hen there is an actual dispute as to ownership of property, the court may not try such an issue in a C.R.C.P. 69 proceeding, because the purpose of a C.R.C.P. 69 proceeding is to discover what property the judgment debtor has that is subject to execution.” Sec. Inv. Prot. Corp., 36 P.3d at 179 (citing Walker v. Staley, 89 Colo. 292, 1 P.2d 924 (1931)). In this respect, writ of execution proceedings differ from writ of garnishment proceedings because garnishment proceedings do allow for ownership litigation and, therefore, may reach issues of corporate veil piercing and fraudulent conveyance. Great Neck Plaza, LP v. Le Peep Rests., LLC, 37 P.3d 485, 488-89 (Colo. App. 2001). 2. Application ¶ 24 First, we need not decide whether it is mandatory for a district court to grant a motion for a writ of execution against a judgment debtor because — as discussed above — GF never sought a writ of execution against only the transferor entities, and the district court 
12 appropriately declined to issue the much broader writ of execution that GF requested. ¶ 25 Second, ownership may not be litigated in a C.R.C.P. 69 proceeding. Sec. Inv. Prot. Corp., 36 P.3d at 179. GF sought a writ of execution against the non-debtor entities based on fraudulent conveyance and veil piercing. However, both theories necessarily involve litigating ownership of the real property that might be subject to execution. C.R.C.P. 69 therefore did not apply and the district court correctly declined to issue the requested writ. ¶ 26 Relying on Great Neck Plaza, 37 P.3d 485, GF asserts that the district court erred by refusing to consider its arguments regarding fraudulent transfer and veil piercing. But Great Neck was a garnishment case, and there are significant differences between a garnishment proceeding and an execution proceeding. See Maddalone v. C.D.C., Inc., 765 P.2d 1047, 1049 (Colo. App. 1988) (cataloguing differences between garnishment proceedings under C.R.C.P. 103 and execution proceedings under C.R.C.P. 69). We decline GF’s invitation to interpret C.R.C.P. 69 as allowing for the same procedures as C.R.C.P. 103. C. Appellate Fees and Costs 
13 ¶ 27 Both GF and the defendants request an award of their appellate attorney fees and costs. We grant both requests. 1. Indemnification Clause ¶ 28 GF requests its appellate costs and fees because this appeal arises from an attempt to enforce a money judgment related to a transferee claim. GF is entitled to such an award under the plain language of the contract. ¶ 29 The tax-credit agreements each provide the following: Transferor shall indemnify, defend and hold the Transferee and its officers, directors, shareholders, employees, agents and representatives, and its and their heirs, successors and legal representatives (each a “Transferee Indemnitee”) harmless from and against any and all damages, claims, losses, actions, liabilities, deficiencies, judgments, fines, penalties, costs and expenses, including, without limitation, reasonable attorneys’ fees and costs of litigation, and any amounts paid in settlement thereof (collectively “Damages”) arising from any Transferee Claim (as defined below). Such payment for Damages shall be made . . . after any written demand by a Transferee Indemnitee for payment of Damages incurred by any Transferee Indemnitee arising out of or related to any breach by Transferor of any representation, warranty or covenant in this Agreement . . . (collectively, the “Transferee Claims”). 
14 ¶ 30 A transferee claim is a claim that arises from the transferors’ breach of the listed warranties; the amount of tax credits to be transferred is one such warranty. Under the plain language of the agreement, GF may recover fees for asserting a transferee claim without regard to whether it actually prevails. Guire I, slip op. at ¶¶ 36-40. There is no language that excludes enforcement proceedings from the scope of the indemnification clause.
2 ¶ 31 This appeal arose from GF seeking enforcement of its money judgment against the transferor entities. The judgment was for the fees and costs incurred while litigating a claim that arose from deficiencies in the tax credits. Guire II, slip op. at ¶¶ 10-14. Therefore, this appeal is “related to” a breach by the transferor entities. GF is contractually entitled to the fees it incurred pursuing enforcement against the transferor entities. ¶ 32 The defendants assert that a transferee claim does not include postjudgment enforcement proceedings. We reject this argument 2 However, the parties are cautioned not to try to turn the process into the punishment itself. Public policy may weigh against enforcement of a contractual fee-shifting provision in cases involving an abuse of the litigation process. See Klein v. Tiburon Dev. LLC, 2017 COA 109, ¶ 29. 
15 because the tax-credit agreements have no such limiting language. See, e.g., Wota v. Blue Cross & Blue Shield of Colo., 831 P.2d 1307, 1309 (Colo. 1992). Because, in this action, GF is seeking to enforce a judgment from a transferee claim, we conclude that the appeal is related to the transferee claim and therefore grant GF’s request to recover its reasonable appellate attorney fees and costs from the transferor entities.
3 2. Frivolous Appeal ¶ 33 The defendants request their appellate costs and fees under C.A.R. 38(b). We agree that a fee award is warranted. ¶ 34 Section 13-17-102(2), C.R.S. 2023, authorizes courts to assess attorney fees against a party that brings an action or appeal that lacks substantial justification. A claim lacks substantial justification if it is substantially frivolous. § 13-17-102(4). A frivolous claim is one that advances no rational argument based on the record or law in support of the claim. Hamon Contractors, Inc. v. Carter & Burgess, Inc., 229 P.3d 282, 299 (Colo. App. 2009). 3 To the extent that the defendants reraise arguments concerning GF’s standing that were rejected in Guire I and Guire II, we decline to revisit those issues. 
16 ¶ 35 Rule 38(b) authorizes this court to assess costs, including attorney fees, against a party that brings a frivolous appeal. A party requesting fees has the burden of proving by a preponderance of the evidence that the claims lack substantial justification. Bd. of Cnty. Comm’rs v. Auslaender, 745 P.2d 999, 1001 (Colo. 1987). ¶ 36 “An appeal may be either frivolous as filed or frivolous as argued.” Calvert v. Mayberry, 2019 CO 23, ¶ 45. As relevant here, an appeal is frivolous as filed if “the judgment by the tribunal below was so plainly correct and the legal authority contrary to the appellant’s position so clear that there is really no appealable issue.” Castillo v. Koppes-Conway, 148 P.3d 289, 292 (Colo. App. 2006) (citation omitted). ¶ 37 GF’s appeal is frivolous as filed. Regarding GF’s contention that the district court should have granted its motion in part and issued a narrower writ of execution than the one it requested, GF did not make any such argument in the trial court until it filed its motion for reconsideration. But as we have already noted — and as the district court observed — new issues may not be raised in a motion for reconsideration. See, e.g., Nelson, ¶ 66 (collecting cases). Yet, despite the fact that the district court had already rejected GF’s 
17 untimely attempt to narrow the scope of its motion for a writ of execution (albeit in an order issued after GF filed its notice of appeal) GF doubled down in its opening brief in this court by asserting — without citing any authority or acknowledging the district court’s order — that it had preserved the issue through its notice of appeal rather than acknowledging its failure to make any such arguments in the district court. See id. (“Objections to trial court rulings must be made contemporaneously with the court’s actions before appellate review is afforded.”). ¶ 38 As for GF’s arguments about the permissible scope of execution proceedings, the plain language of C.R.C.P. 69 and section 13-52-102(1) allows creditors to obtain a writ of execution only against the judgment debtors — not against related parties. Ruscitti v. Sackheim, 817 P.2d 1046, 1048 (Colo. App. 1991). The case law addressing whether ownership may be litigated through Rule 69 is equally clear, and has been for nearly a century: ownership may not be litigated during a writ of execution proceeding. Sec. Inv. Prot. Corp., 36 P.3d at 179; see also Walker, 89 Colo. at 295, 1 P.2d at 925 (“It is beyond the purpose of [supplementary proceedings in aid of execution] to try contested 
18 title to real property. Where title to real property claimed to belong to a judgment debtor stands in the name of another, a creditor's suit is the proper proceeding to subject the property to the satisfaction of a judgment.”). Yet, notwithstanding this clear precedent, and even though the district court expressly relied on Securities Investor Protection Corp. in its order denying GF’s motion, GF barely acknowledges the case in its opening brief (it appears only once, in a block quote of the district court’s order), and instead argues that Great Neck — a garnishment case — controls. But Great Neck itself recognizes the clear differences between execution proceedings under C.R.C.P. 69 and garnishment under C.R.C.P. 103, see 37 P.3d at 489 (citing Maddalone, 765 P.2d 1047), and comes nowhere near suggesting that the rules applicable to garnishment can be applied in an execution proceeding. ¶ 39 While we are mindful that litigants must be given latitude to argue that the law should be extended, GF does not plausibly do so here. And the law that GF does cite is so contrary to GF’s position that there is simply no legitimate appealable issue before us. Castillo, 148 P.3d at 292. As the district court ruled, and as well-
settled case law clearly provides, ownership issues cannot be 
19 litigated in execution proceedings under C.R.C.P. 69. Between the preservation issues that we have already discussed and the untenable arguments that GF advances regarding C.R.C.P. 69, we must conclude that its appeal was frivolous as argued. We therefore grant the defendants’ request for their appellate fees and costs. III. Disposition ¶ 40 We affirm the district court’s order. We also grant both GF’s and the defendants’ requests for appellate attorney fees and costs. We remand the case to the district court for a determination of the reasonable appellate attorney fees and costs for both parties. JUDGE FOX and JUDGE SULLIVAN concur.